### SAGE and another *against* HAWLEY.

In an *action of assumpsit* to recover moneys due from the defendant to the plaintiff, and omitted by mistake in a settlement between them, the statement in the declaration of the time when the alleged mistake occurred, and of the amount due to the plaintiff and not embraced in such settlement, are allegations of matters of substance, in contradistinction to matters of description; and need only to be proved substantially. If the time was prior to the commencement of the suit, and there was any such indebtedness, it is sufficient.

An action of general *indebitatus assumpsit* will lie, after a settlement of accounts between the parties, to recover for an item of indebtedness omitted by mistake in such settlement.

Where the defendant, a debtor of the plaintiff, being a citizen of and domiciled within this state, and residing therein with his family, consisting of his wife

*Hartford,*
June, 1844.

Sage
*v.*
Hawley.

and several children, and having property therein of greater value than the amount of the plaintiff's demand, publicly left his family and property here, and went out of the state, at different times in two successive years, to one of the *Southern* states, where he remained, each time, for the period of about eight months, for the purpose of taking charge of a store of goods, and attending to the business thereof; intending, at his departure, and during his absence, a temporary absence only, and a speedy return to his residence in this state, and without abandoning, or intending to abandon, his domicil here; it was held, that the defendant, during such absence, was not " without this state," within the meaning of the 8th section of our statute of limitations, and therefore, the time of such absence was not to be excluded from the computation of the time limited for bringing the action. [The Chief Justice dissenting.]

THIS was an action of *assumpsit.* The declaration alleged, That on the 15th of *June,* 1836, the plaintiffs and defendant met together and adjusted a certain account, which was, at that time, open and unsettled between them; that at the time of the settlement and adjustment of said account, the defendant was indebted to the plaintiffs in divers large sums of money, and among others, in the following sums, *viz.* in the sum of 350 dollars, for so much money paid to the defendant, by *Sage, Birge & Co.,* at *Hartford,* on the 25th of *September,* 1834, at the request and in the behalf of the plaintiffs, and at the special instance and request of the defendant, with interest thereon until said 15th of *June,* 1836, amounting to 6 dollars and 50 cents; and also in the sum of 100 dollars, for so much money, paid by the plaintiffs, to the defendant, at his special instance and request, at the store of the plaintiffs in *Norfolk,* on the 26th of *October,* 1835; and also for the sum of 80 dollars, paid to the defendant, at *Hartford,* by *Sage, Birge & Co.,* in behalf of the plaintiffs, and at the request of the defendant, on said 26th of *October,* 1835, with interest on said two last-mentioned sums until said 15th of *June,* 1836, amounting to 6 dollars, 60 cents; all which sums of money were, by inadvertence and mistake, omitted and overlooked in the settlement of said accounts, and were not included therein, although the same were then due and owing from the defendant to the plaintiffs; and that, by reason of the premises, the defendant then and there became liable to pay the same to the plaintiffs, when requested; and being so liable, &c.

The defendant pleaded, 1st, *non assumpsit*; 2dly, *non assumpsit infra sex annos.*

On the first plea issue was joined. To the second the plaintiffs replied, that the defendant, after the causes of action mentioned in the declaration accrued to the plaintiffs, *viz.* from the 1st of *October*, 1835, until the 1st of *October*, 1837, was absent out of the state of *Connecticut*; and that the present action was brought within six years after the accruing of said causes of action, deducting the period when the defendant was so absent from the state.

To the latter replication the defendant rejoined as follows: " Although true it is, that on or about the 26th of *October*, 1835, after the causes of action mentioned in the plaintiffs' declaration accrued, (if any such ever did accrue,) the defendant did go out of this state, and did not return thereto until on or about the 1st of *June*, 1836, yet that on that day he did return to this state, and continued therein, until on or about the 1st of *October*, 1836; and although true it is, that on or about the 1st of *October*, 1836, he did again go out of this state, and did not return thereto until on or about the 1st of *June*, 1837, yet that on that day he did return to this state, and has ever since continued therein. And the defendant says, that on the 26th of *October*, 1835. he was, and long before had been, and thereafter continued to be, and still is, a citizen of this state; and that during all the periods of time, during which the defendant was out of this state as aforesaid, the defendant's family, consisting of his wife and several children, continued openly to reside in this state, *viz.* at *Norfolk*, in the same dwelling-house wherein he had, for a long time before, resided with them ; and during all that period, the defendant was, openly and publicly, the owner of and in possession of real and personal property in said *Norfolk*, of the value of 2000 dollars, and amply sufficient for the security of the plaintiffs' demand in their declaration mentioned, if any just demand existed. And the defendant says, that at the times he so left the state as aforesaid, he left it publicly, for the purpose of a temporary absence and business, and with the intention of a speedy return to said *Norfolk*, and without abandoning, and without intending to abandon, his domicil in said *Norfolk :* and during all the time he was so out of this state, he continued said intention of return, until his actual return as aforesaid. And all the matters herein averred were well known to the plaintiffs, at the times when, &c. ;

and the defendant has not been absent from this state, otherwise than as herein set forth." There was then a formal traverse of the second replication; on which issue was joined.

The cause was tried at *Hartford, January* term, 1844, before *Williams,* Ch. J.

On the trial, the plaintiffs claimed, that they had proved, that the defendant had received the several sums in the declaration mentioned, for the uses therein stated, and that, in a settlement thereafter made of their accounts, those items were by mistake omitted. The defendant denied these facts, and claimed particularly, as to the sum of 80 dollars demanded, there was no proof of the precise amount by him received, nor of the precise day on which the sum so claimed was received: that the witness upon that subject testified, that the sum was from 75 to 100 dollars, and the time was in the month of *October,* 1836, but he could not tell the exact sum, or the precise day; and there was no other evidence of the exact sum or time, (if the court rightfully held, that the plaintiffs' books could not be received as evidence of that fact.) The defendant thereupon objected, that the proof did not support the declaration, and requested the court so to instruct the jury. This the court did not do.

The plaintiffs proved, that in the summer of 1837, they gave notice to the defendant of the mistakes in the settlement, and made demand to have them rectified. The defendant did not claim that any such mistakes had been rectified, or that any payment had been made relative to them; but denied that any mistakes had taken place.

The court instructed the jury, that if they should find, that the payments, or any of them, had been made, as the plaintiffs claimed, and they had proved the mistakes in the settlement, as they claimed, the jury would return a verdict for the plaintiffs, for such sum as they should find so paid, and by mistake omitted in said settlement, with interest from the time of notice of such mistake and demand of the defendant.

On the second plea, it was claimed, and not denied, that the facts therein stated were true. It was also claimed, and not denied, that the facts stated by way of inducement to the rejoinder of the defendant, were true. The plaintiffs further claimed to have proved, which was not denied, that while the defendant resided out of the state, in the *Southern* states,

*Hartford,*
June, 1844.
—————
Sage
*v.*
Hawley.

he had charge of a store or shop, in which both himself and one of the plaintiffs were interested, in which was a large and valuable assortment of goods; and that he remained abroad, for the purpose of attending to the business of such store or shop.

Upon these facts the jury were instructed, that they ought to find this issue for the plaintiffs.

The jury thereupon returned a verdict for the plaintiffs, for the sum of 485 dollars, 74 cents; and the defendant moved for a new trial for a misdirection.

*W. W. Ellsworth* and *O. S. Seymour*, in support of the motion.

*T. C. Perkins*, contra.

Storrs, J. The first ground on which a new trial is asked in this case. is, that the proof adduced by the plaintiffs did not support the declaration as to the item of eighty dollars therein mentioned, and that the jury should have been so instructed: and the particular in which it is claimed to have been defective, is, that it failed to prove the mistake as to that item to have been of the precise sum, and to have occurred at the precise time, alleged in the declaration. The validity of this claim depends on the question whether the statements in the declaration, of the particular time of the settlement when the alleged mistake occurred, and of the particular amount of the sum due to the plaintiffs and not embraced in such settlement, are to be deemed allegations of what are termed matters of *substance*, or of matters of *description*. If they are of the former kind, they need only to be proved substantially; if of the latter, they must be proved exactly. We have no doubt that the averments in question are those of matters of substance, and not of description; and therefore, that they were supported by the evidence offered by the plaintiffs. The true sense and meaning of the allegation respecting the settlement, is no more than that such a settlement took place between the parties; and of that respecting the indebtedness, merely that there was an indebtedness from the defendant to the plaintiffs omitted to be embraced in such settlement. The time of such settlement is immaterial, provided it took place

at any time prior to the commencement of the suit, which must be proved on the trial; and the precise amount of such indebtedness is unimportant to the maintaining of the action; it is sufficient that any such indebtedness exists; and its amount must also be proved on the trial. The additional statements of a particular day when the settlement was made, and a particular amount of indebtedness, are mere formal averments, and were obviously introduced, not for the purpose of more particularly describing the settlement or indebtedness, or of defining more precisely the cause of action, (for much more minuteness would have been requisite for that purpose,) but only in order to comply with the familiar rules of pleading on the subject of certainty, which require that a time and place should be mentioned when and where every material fact took place; and that where a material sum or quantity is mentioned, its amount should be specified. Those rules undoubtedly made it necessary for the plaintiffs to state, as matter of allegation, some particular amount of indebtedness from the defendant to the plaintiffs, and (on the supposition that the general *indebitatus* count would not answer, but that it was necessary to declare specially, as the plaintiffs have done here, averring the settlement and the mistake,) some particular day on which such settlement took place. This particularity was requisite, in order to render the declaration, as matter of pleading, unexceptionable; but, by the rules of evidence, allegations of time, place, sums and quantities need not be proved precisely as laid, unless they are so descriptive of something which is essential to the claim of the party averring them, that the identity between the thing alleged and proved would be thereby destroyed, and the proof be subject to the imputation of what is termed a variance; which the defendant has very properly disclaimed in the present case. The principles applicable to this point are too familiar to require illustration, and will be found to be very clearly stated and elucidated, in *Purcell* v. *Macnamara*, 9 *East's R.* 157. and in *Greenleaf's Ev. part* 2. *chap.* 2.

Our courts, many years since, held, that an action of general *indebitatus assumpsit* would not lie, after a settlement of accounts, to recover for an item of indebtedness omitted by mistake in such settlement; but that the declaration should be *special,* pointing out such mistake. And it is urged, by the

defendant, that as the cause of action must be thus particularly stated, a corresponding particularity of proof is necessary, in order to secure to him the benefit intended by requiring this mode of declaring. The rule that allegations of matters of description only need be exactly proved, applies, however, to all declarations in personal actions, and is not confined to those only where the allegations are of a general character, like general *indebitatus assumpsit :* and that rule of evidence was not intended to be varied or affected, by the decisions last referred to, which went upon the ground that, unless the declaration was special, the defendant would be unapprized by it of the character of the claims made upon him, and would be therefore liable to be surprised on the trial, by proof of those of which he had had no notice. The range of the plaintiff's proof is, of course, more restricted, as the declaration is more special ; but the nature or competency of the evidence to prove the issue, is not thereby affected ; and the present is a question of evidence, and not of pleading.

Notwithstanding, however, the decisions referred to, we should, in accordance with the doctrine which universally prevails elsewhere, and the principles at present generally applied to actions of general *indebitatus assumpsit,* now hold, that a general *indebitatus* count would sustain a recovery for items of indebtedness omitted by mistake on a settlement of accounts, if there were no other objection. Without going at large into the subject, it may be sufficient to say, that, at the early period when those decisions were made, the general counts in *assumpsit* were comparatively rarely used ;—their utility and safety had not been completely tested in practice ;—and they were, therefore, regarded with a greater degree of jealousy and disfavour than at present ; and with more than long experience since has shown to be necessary. The apprehended disadvantage to the defendant from the generality of the count, is entirely obviated, by the practice of allowing him to require a bill of particulars from the plaintiff ; and indeed, as remarked by *Ellsworth,* J. in *Clark* v. *Smith, Kirby's R.* 130. this kind of action, from the equity of the principles on which it proceeds, and the extensiveness of the remedy it gives, is now highly favoured.

The other ground on which the defendant claims a new trial, involves the true construction of that proviso in the

statute of limitations, which excludes from the computation of the times limited for bringing suits in the cases therein mentioned, the time during which the party, against whom there may be any such cause of action, shall be without this state.

The material facts which appear, bearing on this point, are, that the defendant, being a citizen of and domiciled within this state, and residing therein, with his family, consisting of his wife and several children, publicly left the state, at two successive times, and went to one of the *Southern* states, where he remained each time for the period of about eight months, for the purpose of taking charge of a store of goods there, and attending to the business of said store ;—and that he so left for the purpose of a temporary absence only, and with the intention of a speedy return to his residence in this state, where he left his family during his absence, and without abandoning, or intending to abandon, his home or domicil in this state ; and that he continued his intention of returning during his said absence. And the question is, whether the time during which he was so absent, should be excluded in computing the six years limited for the bringing of this suit.

The judge below proceeded on the ground that the defendant was, during said absences, personally out of this state, and so, during that time, within the very language of the proviso of the statute ; and did not feel at liberty to depart from its plain literal meaning. A construction of this proviso, which should be so literal as to exclude, in all cases, from the computation of the time limited for bringing suits, every portion of time, however small, during which a person domiciled in the state should, with whatever intention, be personally absent from it, would be attended with such practical inconveniences, and would indeed fall so far short of the object to be attained in the passing of the law, that we cannot believe that it would be consonant with the intention of the legislature, which, when ascertained, must prevail over the literal sense of the terms they have used. The intercourse between our citizens and the other, especially the adjacent states, on matters of business, health and pleasure, has become so general, and the absences resulting from it are frequently for so short periods of time, and those often so sudden that they can scarcely be anticipated by themselves or others, that it would be impracticable to ascertain or prove them, with any ordina-

*Hartford,*
*June, 1844.*

Sage
*v.*
Hawley.

ry, if indeed with the greatest, degree of diligence ; and we think, that it would be doing violence to the intention of the legislature to suppose, that the proviso was enacted with reference to these casual and temporary occurrences. Indeed, the construction claimed by the plaintiff, would exclude from the computation those comparatively minute periods of time, during which that large class of our citizens living in towns bordering on other states, should be engaged in the adjacent towns in those states, in attending perhaps to portions of their farms there situate, or to those almost daily matters of business which would call them thither. And with respect to another considerable class, who are engaged in a sea-faring life, and therefore have occasion to be away from the state for much longer periods in the prosecution of their business, such construction would also exclude these periods. But it has never been supposed, that our statute of limitations has been suspended, by such absences. Although it would be competent for the legislature to provide, that the computation of the times limited for bringing suits should be interrupted, by absences of these descriptions, we think, that the language of the act should be much more explicit than that used here, before we should be required to infer such an intention.

The great object of the statute of limitations, enacted on motives of public policy, as well as to protect private rights, was to silence stale claims, or prevent the enforcement of those where the failure of the memory of witnesses, or their death, or the loss of other evidence, might defeat justice, or at least render its administration uncertain and hazardous, by requiring claimants to lay the foundation, by a suit, for bringing their demands to a legal adjudication, within such reasonable period of time that these consequences would not probably ensue. Hence it is provided, by that statute, that the actions therein mentioned shall not be brought but within the times therein limited, after the right of action shall accrue. The bringing of a suit, which is the commencement of a legal proceeding for an investigation and decision of the claim, is the act which is intended by the statute to be expedited, and that by subjecting the plaintiff to the loss of his claim, in case he shall have neglected to prosecute it within the prescribed time. But it was obvious, that there might be cases where,

although a suit should be seasonably commenced, the object of it would be frustrated, without any such fault on his part as should subject him to a forfeiture, or loss of his demand ; and others, where there would be an entire omission to commence a suit within the time limited, without the least fault or neglect on the part of the claimant, and where the principles of natural justice would therefore plainly require that his rights should be saved.   In the former class, for instance, the legislature have included those cases where a judgment obtained by a plaintiff has been reversed on writ of error, and also those where, after a verdict for the plaintiff, on a motion in arrest, judgment is given against him that he take nothing by his writ or declaration ; in which cases a further time is allowed, by the eighth section, for commencing a new suit. In the latter class, are embraced, among others, those cases where the situation of the defendant was such that it was impossible to commence a suit against him, in which the rights of the parties could be effectually determined.   To preserve the rights of the plaintiff, in such a case, the proviso in question, and which is contained in the same section, was, in our judgment, intended.   It provides, that "in computing the time limited in the several cases aforesaid, the time during which the party, against whom there may be any such cause of action, shall be without this state, shall be excluded from the computation."   *Stat. p.* 406. § 8. (ed. 1838.)   Considering this provision as being designed to protect the rights of the plaintiff, in those cases where it was not practicable for him to enforce them, by a suit, in consequence of the absence of the defendant from the state, its justice and propriety are most obvious.   But it is not necessary, nor does justice seem to require, that we should extend it by construction, so far as to include in the computation of the time limited for bringing suits, those periods when the defendant was personally out of the state, but during which the plaintiff might, notwithstanding, have commenced a personal action against him, by the judgment in which he would be conclusively bound ; and especially, in view of the difficulties already adverted to, which would follow from such a construction.   If the defendant is not domiciled, or has not his residence within this state, no action can be brought in his absence against him, by the judgment in which he would be personally bound, because

*Hartford,*
June, 1844.

Sage
*v.*
Hawley.

there would be a want of legal notice to him of the suit; although it would be in the power of his creditor, if the property of such defendant, or debts due to him within the state, are discovered, to proceed against them specifically or *in rem*, under our statutes of foreign attachment, and appropriate them on the judgment which should be obtained. That, however, would be the extent of the operation of the judgment. Since therefore, in such a case, it would not be in the power of a creditor to institute any legal proceedings, by which his legal rights could be conclusively ascertained and fixed, it would be manifestly unjust to preclude him from such proceedings, whenever it should be in his power to commence them. But if the defendant is domiciled or resident within the state, although he may be temporarily absent therefrom, provision is made by our laws, by which the plaintiff may commence a personal action against him, in which a judgment may be obtained, which will be binding and conclusive between the parties to all intents and purposes; and therefore, in such a case, no saving of the right of the plaintiff to commence such suit is necessary.

Looking at the policy and provisions of the whole act, a majority of the court are of opinion, that the provision in question does not apply to the temporary personal absence from the state of a defendant domiciled within it, and retaining that domicil; but that it embraces those cases only, where the defendant is without the state, under such circumstances that a personal suit cannot be commenced against him; and therefore, that the time during which the defendant in the present suit was absent from the state, under the circumstances stated in this motion, ought not to have been excluded in computing the time limited for the commencement of the suit.

So little light is shed upon the statute in question, by the statutes in other states of a similar character, which have been adverted to, the phraseology, if not the policy, of which appear to be different from ours, that it is not considered necessary to remark upon them.

We are of opinion, for these reasons, that on the last ground urged, a new trial should be granted.

In this opinion CHURCH, WAITE and HINMAN, Js., concurred.

Williams, Ch. J.　In one part of this case I concur entirely with my brethren.　In the other, I am not prepared to come to the same result.

*Hartford,*
June 1844.

Sage
*v.*
Hawley.

The defendant relies upon the statute of limitations, six years having elapsed since the cause of action accrued.　The plaintiffs reply to this, that during these six years the defendant was without the state, seven months in two successive years, and rely upon the proviso in the statute, that " In computing the time limited in the several cases aforesaid, the term during which the party against whom there may be any such causes of action shall be without this state, shall be excluded from the computation."　Language more full, clear and imperative cannot be made use of.　But the defendant relies upon these facts to obviate it.　He went away openly, with the knowledge of the plaintiffs ; he went away temporarily ; he left his family here, and abundance of property.　Still the question recurs, was the defendant without the state ?—Is an absence of more than a year out of six, being without the state, so as not to be computed a part of the six years ?　It is said, as his family and property were here, if this time is to be deducted, then every single day in which the party is over the line of the state is to be excluded from the computation ; and such a construction would, in the constant intercourse with other states, be very inconvenient, and it cannot be supposed was intended by the legislature.

That there may be inconveniences attending this construction, will not be denied.　But is the debtor to complain of them ?　The limitation is for his protection.　If he is not willing to comply with its terms, surely he ought not to complain ; and as he, of all others, best knows whether he has, or has not, complied with them, he must suffer least by any uncertainty in them.　The creditor takes upon himself the burden of proof ; and if he is able to show, that the time required by statute has not elapsed, who shall say this shall not be allowed, because it may be difficult?　But the objection supposes, that the legislature would not have passed a law, which would have such an operation.　The words used, it is believed, are peculiar to our statutes.　We find them first in the statute concerning book debts, enacted in 1785 ; and from that they were copied into this statute, in 1821.　At the former period, before the constitution was adopted, while

steam-boats and rail-roads were unknown, the intercourse between the states was not what it now is:—we were a home people; and a journey from one state to another, except from the border towns, was almost as infrequent as is now a voyage to *Europe.* Of course, very different notions would prevail upon such subjects; and this should be taken into consideration, when looking at these statutes. But if we regard the words as if first used in 1821, some little inconvenience arising from a strict construction of the statute, will not authorize the court to depart from its letter, unless the circumstances are such as manifestly imply another intent in the lawgivers.

Such an intent we may sometimes discover, when a literal construction would be evidently contrary to the general scope and spirit of the law; as when a statute was enacted in *Italy,* to prevent assassination, that whoever should draw blood in the street should suffer death; no one can suppose it referred to the surgeon who opened a vein to save the life of his patient. We may also infer the intent, when the legislature use terms which have received a known and settled construction; as when they adopt the statute of frauds, or when the preamble recites the evils which they intended to guard against, as was the case in the ancient statute relating to foreign attachments.

But this statute is a mere political regulation. The defendant can claim no equitable consideration. The language is peculiar, not adopted from some statute which has received a construction; and it has no preamble to lead us to the particular object in view. How then can we discover the intent but by the language used? I have tried to fasten upon something on which I could rely, but in vain. It seems to me, that we must either give a literal construction to the statute, or we must say, that the absence must be of such a character as to prevent the creditor from bringing a suit against the debtor, so that in fact he shall not have six years for that purpose.

But if we adopt that construction, then we must say, that it is no matter whether the debtor left his family here, or not; whether he were absent temporarily, or permanently; or whether he was ever in the state, or not: if he had property here, by which the debt might be secured, he had not been

without the state according to the meaning of this statute. In short, we introduce an entirely new provision into the statute, such as was the law in *Massachusetts;* (7 *Mass. R.* 716.) but which our legislature did not see fit to adopt. Such a liberty, it is not claimed, we are authorized to take. The absence, then, might be such an absence as would not prevent a suit.

*Hartford,*
June, 1844.

Sage
*v.*
Hawley.

But it is said, if his domicil is in this state, so that he could gain a settlement, then he is not without the state, within the meaning of the statute.

The statute as to settlement uses very different language. A settlement is not to be gained, unless a person resides in a town six years, or, as expressed in one section, unless he shall have *statedly* resided in a town one year. By a residence in a place, we understand making that place our home for the time; and a temporary absence shall not deprive us of our home. Besides, a settlement is gained for a *family;* and we naturally look to see where the family are. In *Massachusetts,* therefore, they have, in the revised statutes, embraced both ideas—absence from the state, and residence abroad. If the debtor be absent from, and resides out of, the state, the time shall not be taken as part of the time limited. *Rev. Stat.* 700.

But our legislators place it merely upon the debtor's being *without* the state. Suppose this proviso were in a statute limiting prosecutions for murder; would it be doubted that every day the accused was without the state, would be withdrawn from the computation? Would the difficulty of his living in a border town, and being out and in at various times, be thought of, in construing the statute, or bringing the offender to justice? Would it not be enough to say to such a plea, the accused has the full benefit of the law, if he has six years while he was within the state? The object of that law would be, that the offender should be, for at least six years, subject to arrest under our laws. And I do not feel at liberty to say, the legislature did not, in this statute, mean the same thing. There have been those who have considered the body the best security for the debt; and if the legislature have chosen to say, that while the debtor withdraws his body from that process, he shall not have the benefit of the protection of the statute of limitations, it does not appear to me

so severe a rule as to require any strained interpretation to avoid it.

But while it is admitted, that the jurisdiction, which the attachment of property gives, will have no effect upon the construction of the proviso in this statute, it is said, that as a suit founded upon residence, and judgment upon it, will lay a foundation for a suit in another state, when a judgment founded upon an attachment of property will not be so regarded, therefore we may presume, that the legislature intended such an absence as would prevent a suit not founded upon an attachment of property. This idea, though ingenious, is a refinement not to be ascribed to a legislature. That a creditor, who neglected to sue for six years, should be barred, because he did not bring a suit, when such suit could result in nothing but an empty judgment; and that another creditor should not be barred, who could have satisfied his judgment, by abundant property; (the time of absence being the same;) is a distinction which has so little in itself to recommend it, that it seems to me there should be something imperative in the statute to require it.

If we say, that such a construction will answer all the objects of the act, I reply, that so it would whenever the debtor leaves goods exposed sufficient to satisfy the debt; and the creditor, who neglects to secure himself, deserves no favour. But it is sufficient to say, this is not the provision of the statute. When, then, we have so little to guide us as to the intent of the legislature, aside from the language made use of, it seems to me most safe to rely upon the clear expressions of the statute itself.

New trial to be granted.