ELSIE R. CLEGG ET AL., ADMINISTRATRICES, *vs*. NOBLE P. BISHOP.

Third Judicial District, Bridgeport, October Term, 1926.

WHEELER, C. J., CURTIS, MALTBIE, HAINES AND HINMAN, Js.

When a cause of action arises against a nonresident, the statute of limitations begins to run as soon as he acquires a usual place of abode in this State and, in case of a former resident, as soon as he returns to this State.

If the portions of time during which the statute has run, when added together, aggregate the full statutory period, the claim will be barred, provided the statute is pleaded.

The purpose of excluding from the computation of the statutory period the time when the defendant is "without the State" (§ 6169 of the General Statutes) is to prevent the running of the statute during such absences of the defendant as make it impossible to serve him with process in an action *in personam* against him. It has no relation to the mere temporary absences of a defendant domiciled or resident in this State.

Neither "residence" nor "usual place of abode" imports domicil, though they may be concurrent; and though a person can have only one domicil, he may have two or more places of residence

within a State or in two or more States, and each of them may be a "usual place of abode" for the service of process.

The claim in the present case was for the balance due on six promissory notes, the last of which matured in September, 1914. Between that date and October, 1921, C, the maker, was domiciled in New York where he owned and occupied a house and maintained his business. During this time he also owned a farm in Stratford in this State, which he had purchased in 1910 and upon which were two dwellings, the larger being occupied by his employees who cultivated and operated the farm throughout the year, and the smaller by himself and his wife from about April 1st until Thanksgiving time, she remaining there for this entire period and he from Saturday afternoon of each week until the following Monday morning, except during August when he was there practically all of the time. In October, 1921, he sold his New York home and moved to the Stratford farm where he thereafter lived and had his domicil until his death in March, 1923. *Held:*

1. That C unquestionably had a "usual place of abode" in Stratford from about the first of April until about Thanksgiving time during each of the years in question; and that, since the total of these .months added to the time following his permanent removal to the farm, exceeded the six-year period of the statute of limitations, the claim was barred.

2. That it was thus unnecessary to decide whether C had a usual place of abode in Stratford at all times between September, 1914, and October, 1921.

Argued November 5th, 1926—decided January 28th, 1927.

APPEAL by the plaintiffs from the doings of commissioners appointed by the Court of Probate for the district of Stratford in allowing a claim presented by the defendant against the estate of Anthony M. Clegg, late of Stratford, deceased, taken to the Superior Court in Fairfield County and tried to the court, *Wolfe, J.;* judgment for the defendant, and appeal by the plaintiffs. *Error, and Superior Court directed to enter judgment disallowing the claim.*

The trial court found these facts: Anthony M. Clegg died intestate on March 29th, 1923, having had his domicil and usual place of abode in Stratford since October —, 1921. His estate is in process of settle-

ment as an insolvent estate and commissioners were appointed to allow or disallow the claims of creditors. Noble P. Bishop, appellee, presented a claim which was allowed by the commissioners in the amount of $4,043.92. The claim was for the principal amount of $2,500, and interest, being the balance due on six negotiable promissory notes bearing date between February 9th, 1914, and June 8th, 1914, the last one maturing September 25th, 1914. Mr. Clegg was married three times. He resided and was domiciled in Brooklyn, New York, during his marriage to his first wife. He owned and occupied a house in Brooklyn from his marriage to his second wife on August 1st, 1910, until her death on October 11th, 1921, when he sold this house and moved to Stratford where he thereafter lived and had his domicil until his death. On June 4th, 1910, he purchased a farm in Stratford of about twenty acres, giving it to Helen Moen, whom he subsequently married, as a wedding present. There were two dwellings on the farm, the larger known as the "Farm House," and the smaller as the "Cottage." On the farm were horses, cows, pigs, chickens, etc., and it was cultivated and operated throughout the year by a manager who, with the help, occupied the larger house. Clegg and his second wife, from its purchase in 1910 until her death, resided in Stratford from about April 1st of each year, or as soon as the weather settled, and lived in the smaller house until the fall of each of these years. During this period and until about August 1st in each year, Clegg would usually be present at the farm weekends only, arriving on Saturday afternoon and returning on Monday morning to New York to attend to his business located there. Usually during August in each year he would spend practically all of his time at the farm. Clegg and his wife would also sometimes spend Thanksgiving Day at the farm, and on a few occasions

Christmas, and at such times occupied the cottage, using stoves and small heaters, as it was not equipped or furnished for winter use until about 1920. Clegg sold some of the produce of the farm, and in the winter months the farm manager frequently shipped such produce to him at his residence in Brooklyn. Over this entire period some mail came to and from Clegg and others at the farm through the post office at Oronoque in Stratford.

The trial court reached these conclusions: (1) That said Clegg up to his removal to Stratford, in this State, about October, 1921, had his domicil and actual residence in the State of New York. (2) That during the period from the making of said promissory notes to his removal to Connecticut in October, 1921, said Clegg was "without the State" within the meaning of § 6169 of the General Statutes. (3) That the "usual place of abode" of said Clegg up to his removal to this State, in October, 1921, was in the State of New York. (4) That the fact that Clegg spent a portion of his time at the farm in Stratford, as set forth in the finding, did not make such place his "usual place of abode" for the service of process. (5) That at the time appellee's claim was presented to the administratrices of the estate of Clegg, the statute of limitations had not run against such claim. (6) That the action of the commissioners on said estate in allowing such claim, should be ratified and affirmed.

*Arthur M. Marsh* and *John T. Curtis,* for the appellants (plaintiffs).

*Walter P. Judson,* for the appellee (defendant).

WHEELER, C. J. As early as 1910, and until Clegg moved to Stratford in 1921, he had his domicil and

Clegg v. Bishop.

actual residence in Brooklyn, New York. The trial court held that from the making of the notes in 1914, to his removal into this State in October, 1921, his usual place of abode was in the State of New York, and that the portion of this period of time which Clegg passed at the farm in Stratford did not make it his "usual place of abode," and that he was during this period "without the State" within the meaning of § 6169 of the General Statutes, and therefore the statute of limitations had not run against the claimant's claim in this State. Section 6169 provides: "In computing the time limited in the several cases aforesaid the time during which the party, against whom there may be any such cause of action, shall be without this State, shall be excluded from the computation." The appellants appeal upon the ground that Clegg had a usual place of abode for the purpose of serving process in Stratford during the period between 1914 and until his decease in 1923, and cannot, for that reason, be held to have been "without the State" within the meaning of §6169 of the General Statutes. The appellants maintain their appeal upon the additional ground that if it be held that Clegg did not have a usual place of abode during this entire period, he at least had such an abode for the purpose of service of process for at least eight months of every year from September, 1914, to November 30th, 1921; that during such periods he was not "without the State" within the meaning of § 6169 of the General Statutes, and that the aggregate of these periods would more than equal the full statutory period barring the right of action upon the claim.

Two of the points urged by the appellants cannot be controverted. (1) The statute of limitations begins to run in this State whenever the cause of action arises against a nonresident, as soon as he acquires a usual

place of abode in this State, and against a former resident immediately upon his return to the State. *Waterman* v. *Sprague Mfg. Co.*, 55 Conn. 554, 576, 12 Atl. 240; *Hatch* v. *Spofford*, 24 Conn. 430, 442.

(2) The periods of time during which this statute has run may be added together and when their aggregate is the full statutory period, the statute may be said to have run and the claim barred, if the statute be pleaded in bar. *Gibson* v. *Simmons*, 77 Kan. 461, 94 Pac. 1013.

The controlling question in each of the positions of the appellants is whether Clegg was "without the State" within the meaning of § 6169 of the General Statutes so that the statute of limitations did not run against the claimant's claim, either for the entire period, or for sufficient portions of the period to make up the statutory term. The purpose of this section, as we hold in *Sage* v. *Hawley*, 16 Conn. 106, was to prevent the running of the statute, and thus to preserve the right of action during the absence of the defendant when it was impossible to serve him with process in an action *in personam* against him. The exclusion from the computation of the period under the statute of limitations of the time when the defendant is "without the State" has no relation to the temporary absence of a defendant when domiciled or resident in the State.

Under General Statutes, § 5591, service of process may be made by leaving an attested copy with a defendant, or at his usual place of abode. "The most prominent purpose of the law in prescribing the modes of serving civil process was to ensure actual notice to defendants." *Grant* v. *Dalliber*, 11 Conn. 233, 237. The place where one would be most likely to have knowledge of a service by copy would be at his usual place of abode. What, then, does "usual place of

abode" signify as used in this statute? One may have two or more places of residence within a State, or in two or more States, and each may be a "usual place of abode." *Dorus* v. *Lyon,* 92 Conn. 55, 57, 101 Atl. 490. Service of process will be valid if made in either of the usual places of abode. It will reach him in one as well as the other. *Dorus* v. *Lyon, supra,* is decisive that one may have a home and residence outside this State and yet have a usual place of abode in this State for service of process and sufficient to permit the statute of limitations to run. *Grant* v. *Dalliber, supra; Dunn's Appeal,* 35 Conn. 82.

" 'Residence' does not necessarily import domicil. *Easterly* v. *Goodwin,* 35 Conn. 279, 286." *Hewitt* v. *Wheeler School & Library,* 82 Conn. 188, 194, 72 Atl. 935. Nor does usual place of abode import domicil. There is no relation between them, though they may be concurrent. A person may have two or more places of abode while he can have only one domicil. Where one has two usual places of abode, one within and one without the State, either of these abodes will be a usual place of abode for the service of process under our statute.

The appellants urge most forcefully their claim that service upon Clegg at his place of abode in Stratford at any time subsequent to 1910, would have been a full compliance with the letter of the statute, and have served as well its purpose. The case may be decided without ruling upon this claim. They urge, further, that Clegg's residence in Connecticut was such that he had a place of abode there for the service of process from September 25th, 1914, to November 30th, 1921, for a period upward of fifty-seven months, and thereafter until his death on March 29th, 1923, a place of abode and a domicil in Connecticut. That Clegg had an abode in Connecticut for a part of the period be-

tween 1914 and November 30th, 1921, must be conceded upon the facts found. He operated a farm in Stratford through a manager who occupied the larger of the two houses on the farm the year around with his family and such help as might be necessary for the farm work. From early in April until the fall of each year he and his wife occupied the smaller house, she remaining there for the entire period and he from Saturday afternoon of each week to Monday morning, when he would return to his business in New York, except in August when he would spend practically all of his time at the farm. These facts gave Clegg a usual place of abode for the service of process there during such period of residence. The finding is that Clegg and his wife remained upon the farm until the fall of each year. "Fall" covers a period of time of upward of three months; the trial court should have found a definite period of time instead of the ambiguous expression "until the fall of each year." Turning to the evidence, we find the appellants definitely proved that Clegg lived or had his usual place of abode in Stratford in each of these years from about April 1st until about Thanksgiving time. We correct the record accordingly. We find that from September 25th, 1914, until his death, March 20th, 1923, Clegg had his usual place of abode for service of process in Stratford during a period in excess of six years. Since Clegg had unquestionably a usual place of abode in Stratford during a portion of each of these years, the statute of limitations would run during the various periods of his residence in which he in fact had there a usual place of abode for personal service, and this period exceeded the six-year period required in order to bar this claim under the statute of limitations.

The decision of the trial court in effect was that no matter what the length of time Clegg had a usual place

of abode in Stratford, the statute of limitations would not run in his favor in Connecticut since he had not abandoned his domicil in the State of New York and established it in Connecticut. This doctrine is at variance with our decisions, notably Dorus v. Lyon, supra, and with the theory of our law that while one's usual place of abode continues in Connecticut it subjects him to personal service and sets in motion the running of the statute of limitations during this period which may be availed of at the option of such person. He is not during such period "without the State."

There is error, the judgment is reversed and the Superior Court directed to enter its judgment in favor of the appellants disallowing the claim.

In this opinion the other judges concurred.