The defendant, a roomer at the boarding house of the plaintiff in Homestead, Pennsylvania, incurred a bill for board and room for which the plaintiff claims $325. No contest was made over the correctness of the claim. The cause of action on this claim accrued in the early part of October, 1931. The special defense interposed is the statute of limitations, inasmuch as suit was instituted on December 9, 1938, by attachment of an automobile, with personal service being made December 17, 1938, which is more than six years from the date of the accrual of the cause of action.
To this defense the plaintiff replies that the defendant has not had a usual place of abode in, nor has he been a resident of, the State of Connecticut for six years prior to the commencement of this action. The issue, therefore, is whether or not the statute of limitations bars the plaintiff's action. Now, in this connection, the evidence discloses that the defendant left the home of the plaintiff October 5, 1931, to come to East Hartford, Connecticut, remaining there until December 29, 1931, at which time he returned to Homestead, Pennsylvania, remaining there until February 6, 1933, when he came to Hartford, Connecticut, where he has lived continuously to the present time. So that the general question of the statute of limitations barring the plaintiff's action is dependent on the question whether the *Page 147 
period during which the statute of limitations has run shall include the time from October 5, 1931 to December 29, 1931, a period of two months and 23 or 24 days, which added to the period from February 6, 1933, the date of his coming to Hartford, to December 17, 1938, the date of personal service of the writ in this action, approximately five years, ten months, exceeds the six years limitation which is the statutory period within which an action on debt must be brought (Gen. Stat. [1930] § 6005).
"The date when the writ was served, not its date or the return day, marks the time when the action was begun." Tuoheyvs. Martinjak, 119 Conn. 500, 501; Sanford vs. Dick,
17 id. 212.
"The most prominent purpose of the law in prescribing the modes of serving civil process, was, to ensure actual notice to defendants." Grant vs. Dalliber, 11 Conn. 233, 237.
Now, section 6022 of the General Statutes, Revision of 1930, concerns the computation of times limited in various statutes of limitation, and provides as follows: "In computing the time limited in the several cases aforesaid, the time during which the party, against whom there may be any such cause of action, shall be without this state, shall be excluded from the computation" (italics added).
The purpose of the statute is evident from the rule that no action in personam may be commenced unless personal service is made on the defendant in the jurisdiction where the action is to be heard, and if the defendant is "without this state" no service can be made upon him, which would result in a hardship on a plaintiff if the statute of limitations were to continue to run so as to bar the remedy if its enforcement is prevented by the absence of the defendant from the state. Sage vs. Hawley,16 Conn. 106. But if the defendant is within the state (except by privilege) service may be made and the statute of limitations shall run. Wilson Sewing Mach. Co. vs. Wilson, 51 Conn. 595;Chittenden vs. Carter, 82 id. 585, 589.
Now the case of Clegg vs. Bishop, 105 Conn. 564, is important to our discussion because it interprets section 6022 in the light of some previous decisions, namely, Sage vs. Hawley, supra;Waterman vs. Sprague Mfg. Co., 55 Conn. 554; andDorus vs. Lyon, 92 id. 55, and deserves rather extensive quotations from it (p. 568): "(1) The statute of limitations begins to run in this State whenever the cause of action arises *Page 148 
against a nonresident, as soon as he acquires a usual place of abode in this State, and against a former resident immediately upon his return to the State. Waterman vs. Sprague Mfg.Co., 55 Conn. 554, 576, 12 A. 240; Hatch vs. Spofford,
24 id. 430, 442.
"(2) The periods of time during which this statute has run may be added together and when their aggregate is the full statutory period, the statute may be said to have run and the claim barred, if the statute be pleaded in bar. Gibson vs. Simmons,77 Kan. 461, 94 P. 1013."
The court later in its opinion (p. 569) proceeds: "The place where one would be most likely to have knowledge of a service by copy would be his usual place of abode. What, then, does `usual place of abode' signify as used in this statute? One may have two or more places of residence within a State, or in two or more States, and each may be a `usual place of abode.' Dorus vs. Lyon, 92 Conn. 55, 57, 101 A. 490. Service of process will be valid if made in either of the usual places of abode. It will reach him in one as well as the other. Dorusvs. Lyon, supra, is decisive that one may have a home and residence outside this State and yet have a usual place of abode in this State for service of process and sufficient to permit the statute of limitations to run. Grant vs. Dalliber, supra; Dunn'sAppeal, 35 Conn. 82."
The court continues (p. 570): "`Residence does not necessarily import domicil. Easterly vs. Goodwin, 35 Conn. 279,286.' Hewitt vs. Wheeler School Library, 62 Conn. 188,194, 72 A. 935. Nor does usual place of abode import domicil. There is no relation between them, though they may be concurrent. A person may have two or more places of abode while he can have only one domicil. Where one has two usual places of abode, one within and one without the State, either of these abodes will be a usual place of abode for the service of process under our statute."
In the Clegg case, which involved a claim against an estate, the deceased had his domicile and actual residence in Brooklyn, New York, but had spent summers on his farm in Connecticut from 1910 to 1921, from April 1st to November 1st, or seven months of each year. The remainder of the year was spent by him at his admitted domicile in New York. Even during the summer months he was in Connecticut only on week ends, although his wife remained here. The question was whether *Page 149 
the periods of time when he was in Connecticut could be joined so as to bar the remedy. The court held as outlined above, that in cases of this character the statute of limitations begins to run as soon as the nonresident acquires a "usual place of abode" in this state, and that Clegg had acquired a "usual place of abode" under the facts disclosed above for the service of process during such periods of residence, and that the periods of time he spent in this state could be added together to total the full statutory period of the statute of limitations.
The basis of the trial court's decision was that no matter what the length of time Clegg had a usual place of abode in Connecticut, the statute of limitations would not run in his favor in Connecticut since he had not abandoned his domicile in the State of New York and established it in Connecticut. As the opinion of the appellate court states, this position was over ruled.
So in the case at bar the question is: Did the defendant acquire "a usual place of abode" as understood and outlined inClegg vs. Bishop, supra, the plaintiff conceding that the statute commences to run when the debtor has established a "usual place of abode" in Connecticut.
But it is the contention of the plaintiff that since "temporary personal absence" from the state of a defendant domiciled within does not affect the running of the statute of limitations, then conversely, "temporary personal presence" in a state in which the defendant is not domiciled does not commence the operation of the statute. This position may be taken to be true, for it was the holding of Sage vs. Hawley, supra, where the defendant left the state for extended absences without, however, "abandoning, or intending to abandon, his home or domicil in this state"; and "continued his intention of return during his said absences" and was "domiciled and resident within the state, although he may be temporarily absent therefrom," that the statute of limitations continued to run against the defendant. In other words, "temporary personal absence" of one domiciled here and retaining that domicile does not excuse him from the operation of the statute; likewise one visiting the state for "temporary or transient purposes" does not set in motion the statute of limitations in his favor.
That case seems to emphasize the matter of domicile and residence. Clegg vs. Bishop, supra, however, points out that these are not controlling on the matter of "usual place of abode" *Page 150 
for purposes of service of writ. It says (p. 570): "`Residence' does not necessarily import domicil.... Nor does usual place of abode import domicil. There is no relation between them, though they may be concurrent. A person may have two or more places of abode while he can have only one domicil. Where one has two usual places of abode, one within and one without the State, either of these abodes will be a usual place of abode for the purpose of process under our statute."
Now let us see, in the light of this law, what was the course of the defendant's conduct in this matter. He first came to East Hartford, Connecticut, October 5, 1931. He had been out of work in Homestead, Pennsylvania, for a long time. There was no work to be had there. He came along with his brother, who had been transferred by his employer from Homestead, Pennsylvania, to East Hartford. The defendant came to Connecticut with all his belongings, including his tools of trade. He left no ties behind, except the debt he owed there. He gave up his home in Pennsylvania. He came here looking for a job. For the period from October 5, 1931 to December 29, 1931, he had no residence, no domicile, no place of abode anywhere else, except on Lilac street, East Hartford. For a long time prior to his coming to East Hartford, the defendant was "broke" and from his coming until the time he returned, December 29, 1931, he was "broke" and entirely dependent upon his brother, with whom he lived, for support. I have no doubt whatever that when the defendant came to Connecticut, it was his intention to remain here hoping to get a job. It is true he returned to Homestead December 29, 1931. The reason he assigns, namely, for a visit, does not impress me. Upon his return to Homestead he picked up a job which allowed him simply room and board for compensation. It was upon the termination of this work that he returned to Hartford February 6, 1933. I do not think that when he came to East Hartford in 1931 it was for a "temporary or transient" purpose. On the contrary, I believe that he intended to stay here. He knew there was no chance of work in Homestead, and he might possibly get work here through the efforts of his brother and himself. In any event, he was entirely dependent upon his brother for support and keep. If he had any place of abode at all during that period it was in East Hartford, Connecticut. The fact that he did not, as the plaintiff contends, join any particular church or club, or enter into any social life, during that time, while factors to be borne in mind, are not determinative *Page 151 
of the issue. His actions and his expressed intention support the defendant in his position that East Hartford was his home and the only home he had, and thus his place of abode from October 5, 1931 to December 29, 1931. He had abandoned Homestead, Pennsylvania. His abode here was not merely a "temporary personal presence." It was a presence of necessity.
It is, therefore, found that the defendant's "usual place of abode" was in Connecticut from October 5, 1931 to December 29, 1931, and that the statute of limitations operated against this claim during that period, which together with the period of his residence between the date of his return to Connecticut, February 6, 1933, and the date of personal service, December 17, 1938, exceeds the statutory period of six years within which suit on this claim should have been instituted.
 The issues are, therefore, found and judgment is directed for the defendant.