BANANA DISTRIBUTORS, INC.,
Plaintiff-Appellant,

v.

UNITED FRUIT COMPANY and Fruit
Dispatch Company, Defendants-
Appellees.

No. 289, Docket 25457.

United States Court of Appeals
Second Circuit.

Argued May 12, 1959.
Decided Aug. 24, 1959.

Austin, Burns, Appel & Smith, New York City, for plaintiff-appellant. Arnold, Fortas & Porter, Washington, D. C., Thurman Arnold, Abe Krash and Stuart J. Land, Washington, D. C., Robert E. Nickerson, Greenwich, Conn., Blackwell Smith, New York City, and Ernest Leff, Colchester, Conn., of counsel.

Davis, Polk, Wardwell, Sunderland & Kiendl, New York City, for defendants-appellees. Theodore Kiendl, Ralph M. Carson, Edwin J. Jacob and Hal F. Reynolds, New York City, of counsel.

Before SWAN, HINCKS and MOORE, Circuit Judges.

SWAN, Circuit Judge.

This is an appeal by plaintiff and cross-appeal by defendants from different paragraphs of an interlocutory order entered October 14, 1958 which involved rulings with respect to the statute of limitations applicable in this action for treble damages under § 4 of the Clayton Act. Leave to appeal was granted to both parties under the recently enacted Interlocutory Appeals Act, 28 U.S.C.A. § 1292(b).

Plaintiff, a Connecticut corporation, was engaged in the business of selling in that state bananas purchased from defendants. Defendant United Fruit Company, a New Jersey corporation, is a producer of bananas grown in Central and South America and transported by vessel to the United States. Defendant Fruit Dispatch Company, a Delaware corporation, is a wholly owned subsidiary of United Fruit and is the importer and distributor of United Fruit's bananas. On September 3, 1953 plaintiff filed its complaint in the Southern District of New York, alleging violations by defendants of the federal anti-trust laws from 1946 to the date of suit and seeking recovery of treble damages. Concededly plaintiff's cause of action, if any, arose in Connecticut.

There being no applicable federal statute of limitations,[1] it was conceded that the federal courts look to the New York statutes of limitation. See Bertha Building Corp. v. National Theatres Corp., 2 Cir., 269 F.2d 785. Pursuant to the so-called "borrowing statute" of New York, section 13 of the Civil Practice Act,[2] defendants pleaded the Connecticut one year statute[3] and in the alternative the three year statute.[4] Defendants also pleaded the three year New York statute of § 49, subd. 3 Civil Practice Act and in the alternative the six year statute of § 48, subd. 2 Civil Practice Act. In December 1957 a preliminary jury trial was held in accordance with the opinion in Bertha Building Corp. v. National Theatres Corp., 2 Cir., 248 F.2d 833, certiorari denied 356 U.S. 936, 78 S.Ct. 777, 2 L.

---

1. The federal statute, 15 U.S.C.A. § 15b, was not enacted until July 1955.

2. Section 13, Civil Practice Act provides: "Where a cause of action arises outside of this state, an action cannot be brought in a court of this state to enforce such cause of action after the expiration of the time limited by the laws either of this state or of the state or country where the cause of action arose * * *"

3. Conn.Gen.Stats. § 8325.

4. Conn.Gen.Stats. § 8316.

Ed.2d 811, to determine whether the defendants were "without the state" of Connecticut, as contended by plaintiff, during each of the six years preceding the commencement of this action.

The Connecticut tolling statute provides that the time during which a defendant is "without the state" shall be excluded in computing the Connecticut period of limitations.[5] Judge Levet ruled that the "transacting business test" of section 12 of the Clayton Act, 15 U.S.C.A. § 22, was not applicable to the issue of whether defendants were "without the state" for purposes of the Connecticut tolling provision. Judge Levet's opinion embodying that ruling is reported in D.C., 158 F.Supp. 153. The jury's verdict on the preliminary trial found that both defendants were without the state of Connecticut during the entire period in question.

Following the preliminary jury trial, Judge Levet filed an opinion, reported in D.C., 158 F.Supp. 160, holding that the applicable statute of limitations is the three year limitation prescribed by § 49, subd. 3 Civil Practice Act rather than the six year period of § 48, subd. 2, as claimed by plaintiff. This ruling precluded plaintiff from recovering any damages for the period prior to September 3, 1950. A jury trial was then had on the merits of plaintiff's cause. When the jury was unable to agree on a verdict, a mistrial was declared and a new trial ordered. For the purposes of this new trial, pursuant to Rule 16 of the Fed. Rules Civ. Proc., 28 U.S.C.A., Judge Levet entered the order which is before us on appeal. His ruling on the New York statute of limitations is set out in

the first paragraph of this order and plaintiff's appeal challenges its correctness. For the reasons stated in our opinion in Bertha Building Corp. v. National Theatres Corp., filed herewith, Judge Levet's ruling that the New York three year statute rather than the New York six year statute is applicable if the Connecticut statutes of limitation are tolled, must be reversed.[6]

Defendants' appeal challenges the second and third paragraphs of the aforesaid order. The second paragraph incorporates Judge Levet's ruling as to the non-applicability of the "transacting business" test of section 12 of the Clayton Act. The third paragraph denied defendants' several motions to set aside the jury's verdict in the preliminary trial as contrary to the weight of the evidence and contrary to law, and for a directed verdict n.o.v.

On the defendants' appeal it is necessary to construe the Connecticut tolling statute in order to determine as to each defendant whether the pertinent Connecticut statute of limitations has been tolled; if so the pertinent New York statute will be applicable. The first question presented is the correctness of Judge Levet's ruling that the defendants' presence in Connecticut for purposes of applying the Connecticut tolling statute is to be measured by whether they were sufficiently transacting business there to sustain service of process upon them under the law of Connecticut rather than by whether they were transacting business there under the broader standards of section 12 of the Clayton Act which govern the propriety of venue in a federal anti-trust suit.[7] This section of the

5. Conn.Gen.Stats. § 8330.

6. The pertinent New York statute will become applicable only if a shorter Connecticut statute has been tolled. As we hold in a later part of this opinion, the defendant Fruit Dispatch is entitled to a ruling, by way of a directed special verdict in the trial of the limitations issue, that as to it the Connecticut statute has not been tolled. Consequently the case against it will be controlled by the pertinent Connecticut statute.

7. 15 U.S.C.A. § 22 reads as follows: "§ 22. District in which to sue corporation
"Any suit, action, or proceeding under the antitrust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business; and all process in such cases may be served in the district of which it is an inhabitant, or wherever it may be found."

Clayton Act was considered at length in Eastman Kodak Co. of New York v. Southern Photo Materials Co., 273 U.S. 359, 47 S.Ct. 400, 71 L.Ed. 684. At pages 372–373 of 273 U.S., at page 403 of 47 S.Ct. the opinion states:

"And we think it clear that, as applied to suits against corporations for injuries sustained by violations of the Anti-Trust Act, its necessary effect was to enlarge the local jurisdiction of the district courts so as to establish the venue of such a suit not only, as theretofore, in a district in which the corporation resides or is 'found,' but also in any district in which it 'transacts business'—although neither residing nor 'found' therein—in which case the process may be issued to and served in a district in which the corporation either resides or is 'found' ; and, further, that a corporation is engaged in transacting business in a district, within the meaning of this section, in such sense as to establish the venue of a suit—although not present by agents carrying on business of such character and in such manner that it is 'found' therein and is amenable to local process,—if in fact, in the ordinary and usual sense, it 'transacts business' therein of any substantial character. * * *

"We are further of opinion that a corporation is none the less engaged in transacting business in a district, within the meaning of this section—which deals with suits respecting unlawful restraints upon interstate trade—because of the fact that such business may be entirely interstate in character and be transacted by agents who do not reside within the district. * * * "

And at page 374 of 273 U.S., at page 403 of 47 S.Ct., the court added:

"To construe the words 'or transacts business' as adding nothing of substance to the meaning of the words 'or is found,' as used in the Anti-Trust Act, and as still requiring that the suit be brought in a district in which the corporation resides or is 'found,' would to that extent defeat the plain purpose of this section and leave no occasion for the provision that the process might be served in a district in which the corporation resides or is found. And we find nothing in the legislative proceedings leading to its enactment which requires or justifies such a construction."

See also United States v. Scophony Corp., 333 U.S. 795, 807–808, 68 S.Ct. 855, 92 L.Ed. 1091; United States v. National City Lines, 334 U.S. 573, 583, 68 S.Ct. 1169, 92 L.Ed. 1584.

It seems clear, therefore, that plaintiff could have filed its complaint in the federal court in Connecticut, if the defendants were "transacting business" there within the meaning of that phrase as construed in the Eastman Kodak Co. of New York decision, and could have had process served upon them in another district. Plaintiff, however, contends that Connecticut would nevertheless hold that the running of its statutes of limitations was suspended because under Connecticut law the defendants could not have been served with process.

■■ Since an action for treble damages under the anti-trust laws can be brought only in a federal court, there is of course no Connecticut decision which decides the precise point in issue here. The purpose of the Connecticut tolling statute, however, as clearly stated in Dorus v. Lyon, 92 Conn. 55, 57, 101 A. 490, 491 is "to preserve the plaintiff's right of action during a period when, by reason of the defendant's absence, it was impossible to commence an action in personam against the defendant." Accord Sage v. Hawley, 16 Conn. 106, 114–115. Although it is stated in Clegg v. Bishop, 105 Conn. 564, 136 A. 102, 104, that the object of the tolling statute is "to preserve the right of action during the absence of the defendant when it was impossible to serve him with process" we cannot regard that statement as supporting the plaintiff's position here. In the Clegg case, unlike the present case, serv-

ice of process was required to subject the defendant to suit in Connecticut.

■ Consequently, we think it consonant with the purpose of the Connecticut tolling statute to hold that as a matter of Connecticut law the state's statutes of limitations were not suspended if the defendants were subject to suit in Connecticut under section 12 of the Clayton Act. Certainly we cannot see that any discernible policy of the Connecticut tolling statute or of the state would be furthered by holding otherwise. See Bauserman v. Blunt, 147 U.S. 647, 657, 13 S.Ct. 466, 470, 37 L.Ed. 316, wherein the court said: "In the absence of express statute or controlling adjudication to the contrary, two general rules are well settled * * * (2) The bar of the statute cannot be postponed by the failure of the creditor to avail himself of any means within his power to prosecute or to preserve his claim." See also Bertha Building Corp. v. National Theatres Corp., 2 Cir., 248 F.2d 833, 935, 836; Hansen Packing Co. v. Swift & Co., D.C.S.D.N.Y., 27 F.Supp. 364.

■ However, we need not rest our holding here entirely on our view of how the Connecticut courts would decide this question if it could come before them. Even should the plaintiff's interpretation of Connecticut law be correct, we would nevertheless be constrained to hold as a matter of federal law that in a suit to enforce a federal claim, the existence of a federal statute rendering the defendant subject to suit in Connecticut precludes the adoption of state service of process rules to determine whether the defendant was without the state within the meaning of a state tolling statute. Cf. Rawlings v. Ray, 1941, 312 U.S. 96, 98, 61 S.Ct. 473, 85 L.Ed. 605; Bomar v. Keyes, 2 Cir., 162 F.2d 136, 141; cf. also Ragan v. Merchants Transfer & Warehouse Co., 1948, 337 U.S. 530, 533, 69 S.Ct. 1233, 93 L.Ed. 1520. While state law may be adopted by federal law where Congress has not spoken, in order to fill the interstices of federal enactments, it may not be adopted where it supplants or conflicts with existing federal law. Cf. Holmberg v. Armbrecht, 327 U.S. 392, 66 S.Ct. 582, 90 L.Ed. 743.

■■ Plaintiff argues that the question whether the jury should have been instructed with respect to the "transacting business" test of the Clayton Act is moot, because Judge Levet, despite his opinion rejecting that test, in fact charged the jury to find the defendants present if they believed the defendants "transacted business with a fair measure of permanence and continuity" within the state. But a reading of the full charge makes plain that he defined "transacting business" to require a greater degree of business conduct within the state than that demanded by the Clayton Act. For example, the jury was told that "the mere solicitation of business and the mere presence of a soliciting agent of a foreign corporation will not suffice to bring the corporation within the terms of 'doing business' and to make it present in the state so as to subject it to process." This plainly was an inadequate exposition of the test of "transacting business" as expounded in Eastman Kodak Co. of New York v. Southern Photo Materials Co., supra; United States v. Scophony Corp., supra; and United States v. National City Lines, supra. Technical criteria such as "mere solicitation" or "solicitation plus" are not determinative under section 12. The test of venue under section 12 is "the practical, everyday business or commercial concept of doing business or carrying on business 'of any substantial character' * * * " United States v. Scophony Corp., 333 U.S. at page 807, 68 S.Ct. at page 862, 92 L.Ed. 1091.

■ It is undisputed on this record that Fruit Dispatch solicited orders in Connecticut and performed other acts of business there.[8] Obviously, during the period in issue Fruit Dispatch was trans-

---

8. Fruit Dispatch maintained a permanent office in Hartford, Connecticut, whose

personnel: (1) annually solicited orders for $2,500,000. to $3,000,000. worth of

acting business there within the meaning of section 12 of the Clayton Act. In our opinion it was entitled to a directed verdict that the Connecticut statute of limitations was not tolled as to it.

■ The remaining question with respect to the Connecticut tolling statute is whether Fruit Dispatch transacted business in Connecticut in the capacity of an agent of United Fruit and therefore made the latter equally amenable to suit within the state under section 12 of the Clayton Act. See United States v. Scophony, 333 U.S. 795, 68 S.Ct. 855, 92 L.Ed. 1091; Waldron v. British Petroleum Co., Ltd., D.C.S.D.N.Y., 149 F.Supp. 830; Rayco Mfg. Co. v. Chicopee Manufacturing Corp., D.C.S.D.N.Y., 148 F.Supp. 588; United States v. Watchmakers of Switzerland, Information Center, D.C.S.D.N.Y., 133 F.Supp. 40. The jury's verdict that United Fruit was not present in Connecticut cannot stand because of the improper instruction regarding the test of transacting business. Since the jury found under the improper charge that Fruit Dispatch was not doing business in Connecticut it was rationally compelled to find that United Fruit was equally not present in the state. Therefore no finding may be attributed to the jury on the question of whether Fruit Dispatch transacted business in Connecticut as an agent of United Fruit.

Defendant United Fruit contends that under a proper test it is entitled to a directed verdict that it was present in Connecticut. At the preliminary trial officers of both defendant corporations testified about various managerial functions of Fruit Dispatch, including the price at which it sold bananas, which were supervised or controlled by officers of United Fruit during the period in issue. In rebuttal, plaintiff relied on two

documents which it maintains showed that Fruit Dispatch acted as an independent contractor and not as an agent of United Fruit and contends that it is entitled to a directed verdict in its favor as against United Fruit. In our opinion the record does not justify a directed verdict for the plaintiff or United Fruit. See Bertha Building Corp. v. National Theatres Corp., 2 Cir., 248 F.2d 833, 835.

Both on plaintiff's and the defendants' cross-appeals the judgment must be reversed and the cause remanded for further proceedings not inconsistent with the foregoing opinion. It is so ordered.

bananas and forwarded these orders to Fruit Dispatch's New York office for acceptance or rejection, (2) collected the proceeds of Connecticut sales and deposited them in bank accounts maintained in Connecticut by Fruit Dispatch for the purpose of regularly transmitting the funds to New York, (3) received and investigated claims by Connecticut purchasers and forwarded them to New York for determination, (4) arranged for customers to use United Fruit's trademark, and (5) arranged for Fruit Dispatch's jobbers and dealers service departments to provide customers with technical and promotional assistance.