The town of WATERBURY *against* The town of BETHANY.

Where a town was divided, by an act of the legislature, into two towns, *A* and *B*, and it was provided, by such act, that all persons belonging to the old town, and then *absent* therefrom, should be deemed and taken to be inhabitants of such one of said new towns as they *last resided in ;* it was held, that the term " resided," as here used, imported a domicil only, in contradistinction to such a residence as would, by the general law, be necessary to confer a settlement; and that consequently, a pauper belonging to the old town, who was absent therefrom, at the time of the division, but had previously resided, for five or six weeks, immediately preceding his departure, on territory comprised in the new town of *B*, had his settlement in that town.

It is a well established principle of the common law of this state, that on the division of a town, in the absence of a different rule prescribed by the act of division, each part becomes liable to support such paupers as had gained a settlement on the territory comprised in that part ; and hence, the question of settlement, in such case, must be determined, as if the two towns had always been as since the division.

THIS was an action of *assumpsit* for the support of *Elias Perkins,* a pauper.

The cause was tried, on the general issue, at *New-Haven*, *January* term 1847, before *Storrs, J.*

On the trial, it was proved and not denied, that the supplies had been furnished to the pauper, and notice duly given to the town of *Bethany*, as alleged in the declaration. It was also admitted, by the defendants, that the pauper was settled, either in the town of *Woodbridge*, or in the town of *Bethany.*

It was proved, that the old town of *Woodbridge*, anterior to its division in the year 1832, comprised the two societies of *Amity* and *Bethany*; each of which, by an act or resolve of the General Assembly, was constituted a separate town; to one of which was given the name of *Bethany*, while the other retained the name of the old town, *Woodbridge.* *Priv. Stat.* 1132. By this act, it was provided, that " all persons who are now town paupers of said town of *Woodbridge*, shall be equally divided between said new towns; and all persons now belonging to said town of *Woodbridge*, or who shall derive a settlement from them, and now absent therefrom, shall be deemed and taken to be inhabitants of such one of said new towns as they last resided in; and in case any such persons shall hereafter become poor, they shall be maintained, by said new towns respectively to which they shall by this act belong, whether at present within the limits thereof, or not."

It was proved, that the pauper was born in the society of *Amity*, in the present town of *Woodbridge*, *June* 8th 1788, and consequently, attained the age of twenty-one years, on the 8th of *June* 1809; and that he had not subsequently acquired a legal settlement, unless he acquired one under the act of the General Assembly referred to, by a *last residence* of five or six weeks in the society of *Bethany*, in the year 1818, prior to his final removal from the old town of *Woodbridge.*

It was claimed by the plaintiffs, that *Elias Perkins, sen.,* the father of the pauper, was settled, at the time when the pauper became of full age, in that part of the town of *Woodbridge*, which is now *Bethany;* and by the defendants, that he was settled on the territory within the limits of the present town of *Woodbridge*, by virtue of a residence there, for six years successively from the *Summer* of 1798, when, it was claimed by the defendants, he removed from a place called *Bog Place* in *Bethany*, to the society of *Amity*, and there continued to

reside until 1805, and had not afterwards, before the pauper came of full age, acquired a settlement elsewhere. This claim of the plaintiffs was resisted, by the defendants ; and much testimony was introduced and relied on, in support of their respective claims.

It was admitted, that the pauper did not reside in the town of *Woodbridge,* at the time of the division thereof ; but the plaintiffs claimed to have proved, that he resided with his wife, during a period of five or six weeks, in the year 1818, within the present limits of the town of *Bethany ;* and that he had not since resided within any part of the limits of the town of *Woodbridge.* The plaintiffs thereupon claimed, and requested the court to charge the jury, that by virtue of such residence and of said act or resolve, the pauper was to be deemed and taken to be an inhabitant of the town of *Bethany ;* and that this town, by reason thereof, became liable for his support, on the ground that he had last resided in *Bethany,* wherever his settlement would otherwise have been.

The defendants, on the other hand, denied that the residence of the pauper, for the period specified, or for any period short of that which would by law confer a settlement in other cases, would subject them to liability for his support ; and they requested the court so to instruct the jury—claiming, that they were entitled to a verdict, unless the jury should find, that the settlement of the pauper, in the right of his father, was on the territory of *Bethany,* as claimed by the plaintiffs, and not on the territory of the present town of *Woodbridge,* as claimed by the defendants.

The court, for the purpose of this case, charged the jury, that if they should find, that the pauper had his last actual residence on the territory of *Bethany,* according to the claim of the plaintiffs, he became, by virtue thereof, and of the act or resolve of the *General Assembly* aforesaid, an inhabitant of the town of *Bethany,* and legally chargeable thereon for his support ; and that in such case, their verdict must be for the plaintiffs.

The jury thereupon returned a verdict for the plaintiffs, with answers to the following enquiries, submitted to them by the court, for their finding, *viz.*

" 1. Did *Elias Perkins, sen.* reside in *Bethany,* one year

after the birth of *Elias Perkins, jun.,* and before the act of 1792 ? (*a*) *Yes.*"

"2. Did *Elias Perkins, sen.* reside six years constantly in *Bethany*, after the act of 1792, and before *Elias Perkins, jun.* was of full age ? *Yes.*"

"3. Did *Elias Perkins, jun.* last reside in *Bethany*, before the division of *Woodbridge ? Yes.*"

This verdict, with the finding annexed, was accepted by the court ; and the defendants thereupon moved for a new trial.

*Baldwin*, in support of the motion, contended, That the pauper was not settled in *Bethany.* In the first place, by the act dividing the old town of *Woodbridge*, " with all the inhabants belonging and residing within" the respective societies, every person having his *settlement* in either, was transferred with it to the new town, whether actually residing there or not. He might perform his municipal duties in the town where he *resided*, but would continue *settled* where he would have been, if the two towns had always been distinct. Such is said to be the common law of *Connecticut. Oxford* v. *Bethany*, 15 *Conn. R.* 246. 253. *Vernon* v. *East-Hartford*, 3 *Conn. R.* 475. *Mansfield* v. *Granby*, 1 *Root* 179. *Simsbury* v. *Hartford*, 14 *Conn. R.* 192.

Secondly, " residing," or " living," does not mean, in reference to the question of their settlement, those who have their *domicil* there. It includes all who have resided there long enough to acquire a settlement on that territory, whether at the time of the division, they were actually residing thereon, or elsewhere—in the same, or some other town—"whether at present within the limits thereof, or not." *Priv. Stat.* 1133. 15 *Conn. R.* 253. " The said territory, with all the inhabitants now residing, or hereafter to reside, thereon," &c. was held not to change the settlement of the inhabitants residing on the territory, unless they had resided there long enough to acquire a settlement thereon, before the annexation. *Bethany* v. *Oxford*, 15 *Conn. R.* 550. 555. " All the inhabitants living in the society of *North-Bolton*," was extended to those who had resided and acquired a settlement there, before the

(*a*) The act of 1792 here referred to, constitutes the fourth section of the act, *tit.* Inhabitants, *c.* 1. *p.* 360. ed. 1838. providing for the acquisition of a settlement by six years' residence.

incorporation of the town of *Vernon*.    *Vernon* v. *East-Hart-ford*, 3 *Conn. R.* 375.

Thirdly, if the term *residing*, is not construed so as to confer a settlement on actual residents, unless their residence has been long enough to acquire a settlement ; *a fortiori* the expression " *last resided*," ought to receive a similar construction. Under any other construction, it would follow, that if the pauper, instead of residing in *Waterbury*, at the time of the division, had actually lived in *Bethany*, his settlement would, on the facts claimed by the defendants, have continued in *Woodbridge*, where his father was settled ; whereas now, in consequence of his not living in *Bethany*, at the time of the division, he is settled there.    Such, it would seem, could never have been the intention of the General Assembly.

*Kimberly* and *Buel*, contra, contended, That the act of the General Assembly of 1832, dividing the ancient town of *Woodbridge*, must controul the decision of this case ; and that by the true construction of that act, the pauper's settlement was in *Bethany*.

In the first place, the act referred to has provided a different rule from the common law rule, regarding the liability of the new towns respectively, for the support of such inhabitants of the old town as were then *absent* from the town, and might afterwards become chargeable.   It provides, that such persons " should be deemed and taken to be, inhabitants of such one of said new towns, as they *last resided in*."    *Priv. Stat.* 1132.

Secondly, it is apparent that the legislature did not here intend such a residence as would by law give the pauper a *legal settlement* upon the territory.   The terms *settlement* and *residence*, have each a distinct and well ascertained meaning.    *Oxford* v. *Bethany*, 15 *Conn. R.* 550.    *Phillips* v. *Kingfield*, 19 *Maine R.* 381.    *Howard* v. *Roxborough*, 4 *Metc.* 571.

Thirdly, the act recognizes three different rules as applicable to three different classes of persons.    1st. In regard to that class, who are *residing on the territory*, it is provided, that if they should afterwards become chargeable, they should be supported by that town wherein they had their legal settlement.    2dly.  In regard to those who were, *at the time, charge-*

*able,* it provides for an equal division. 3dly. In regard to those who were *absent,* at the time of the division, and should afterwards become chargeable, it is provided, that they should " be deemed and taken to be inhabitants of such one of said new towns as they last resided in." Similar distinctions have been recognized in other acts dividing towns, or incorporating new ones from old, with regard to which no question has been made. See *Priv. Stat.* 1141. incorporating *Canton; Id.* 1174. *Orange; Session Priv. Stat.* of 1844. *p.* 36. *Naugatuck; Id.* of 1839. *p.* 44. *East-Lyme.*

STORRS, J. It is a well established principle of the common law of this state, as expressed by *Waite,* J., in the opinion of the court in *Bethany* v. *Oxford,* 15 *Conn. R.* 550., that when a town has been divided, each part becomes liable to support such paupers as may have gained a settlement in that part, provided the legislature, on the division, has not prescribed a different rule ; and that the question, as to the settlement of paupers, must be determined as if the two towns had always been as they now are, except so far as the legislature may have otherwise provided. *Mansfield* v. *Granby,* 1 *Root* 179. *Vernon* v. *East-Hartford,* 3 *Conn. R.* 475. *Simsbury* v. *Hartford,* 14 *Conn. R.* 192. *Oxford* v. *Bethany,* 15 *Conn. R.* 246. *Bethany* v. *Oxford, Id.* 550. If, therefore, there were no provision in the act of 1832, dividing the former town of *Woodbridge,* and constituting a part of it the town of *Bethany,* specially applicable to the circumstances of the pauper in question in this case, and thus prescribing in which of those towns he should be deemed to have a settlement, it would be necessary to determine, by the general laws relating to the settlement of paupers, in which part of the town thus divided he was settled, at the time of the division. That act, however, contains the following provision : "All persons [now] belonging to the town of *Woodbridge,* or who [shall] derive a settlement from them, and [now] absent therefrom, [shall] be deemed and taken to be inhabitants of such one of said new towns *as they last resided in ;* and in case any such persons [shall hereafter] become poor, they [shall] be maintained, by said new towns respectively to which they [shall] by said act belong, whether at present within the limits thereof, or not." *Resolves* or *Priv. Laws,* 1132. The case of the

*New-Haven,*
*June, 1847.*

Waterbury
*v.*
Bethany.

pauper in question falls within this provision ; and upon its true construction depends the correctness of the charge of the court below. The defendants insist, that the term " *resided,*" as here used, was intended to denote such a residence as would be necessary, by the general law relative to the settlement of inhabitants, to confer a settlement upon the persons to which it is applicable ; while the plaintiffs claim, that a residence, in the ordinary signification of the term, or domicil, only was intended. We have no doubt that this word, in the provision now under consideration, was intended to be used in the latter sense.

In the first place, although the word *residence* might be used in such a connexion with other language, or with its subject matter, as clearly to show, that it was intended to be synonymous with the word *settlement*, as applicable, in its legal sense, to the inhabitants of towns, we can discover, in the present instance, no evidence from either of these sources, that it was designed to be used in that sense. Its ordinary meaning is that of *domicil*—" our home for the time." *Williams*, Ch. J. 16 *Conn. R.* 119. It has not naturally, like the word *settlement*, any technical signification ; and when, therefore, a technical or artificial sense is endeavoured to be attached to it, it must be clearly shown, that that is the sense in which it was intended to be understood. Although a settlement may be acquired, in some cases, by a residence, these terms have no necessary connexion with each other, because a settlement is often derived by persons otherwise than by, and indeed wholly independent of the circumstance of, their residence or domicil. Not only is there nothing to indicate, that the term in question was here intended to be understood in the sense attributed to it by the defendants, but we think, that the very structure and language of the whole provision show, that it was used in its ordinary, popular meaning. It first mentions the persons, to whom the provision is intended to apply, as those who " belong to," that is, have a settlement in, " the town, or those who shall derive a settlement from them, and are then absent therefrom," and then declares, that they " shall be deemed and taken to be inhabitants of," that is, to have a settlement in, " such of said new towns as *they last resided in*"—thus clearly making the last place of residence, or domicil, of such absentees, as contra-distinguished

*New-Haven,*
*June, 1847.*
_____

Waterbury
*v.*
Bethany.

from that of their original or derivative settlement, the test, in case they should become paupers, by which their place of settlement should be determined.

In the next place, by the principle of our common law, which has been mentioned, in regard to the settlement of paupers, on the division of the town of *Woodbridge,* the paupers of that town would be deemed to have a settlement in that part where they would have had one, if the two new towns had always been distinct, and the new town constituted of that part, would be liable for their support.   The provision in question, on the construction of it which is claimed by the defendants, would be a mere assertion of this ancient and well known general principle, and was wholly unnecessary ; and it cannot be supposed, that the legislature would have thus inserted into the act a provision which was entirely useless.   It was competent for that body, and in our opinion, it was their intention, to provide, in regard to persons absent from the town, who might thereafter become paupers, that the liability of the new towns respectively, into which it was divided, should depend on the more simple and easy enquiry, where they *last resided,* or had their *domicil,* rather than on the more difficult and complicated one, of their legal settlement ;  and that was the sole object of the provision in question.

We have been referred to other acts of the legislature, dividing towns, or creating new ones, or annexing portions of some towns to others, where provisions similar to that which we are considering, are introduced.   It is, however, unnecessary to examine them particularly.   They generally shed but little light on the construction of any particular act of this description.   If their phraseology is different from the one in question, the resemblance would be of but little importance ; and if identical, it would afford no aid, unless it had been the subject of judicial construction.

A new trial, therefore, should not be advised.

In this opinion the other Judges concurred, except HINMAN, J., who gave no opinion, being the owner of real estate in *Waterbury.*

New trial not to be granted.