SAMUEL G. ADAMS *vs.* THE WILLIMANTIC LINEN COMPANY.

The statute (Gen. Statutes, tit. 19, ch. 2, sec. 12,) provides that when any corporation is engaged in transacting business in any other town than that in which its secretary resides, process of foreign attachment may be served upon it by leaving a copy with any agent or clerk employed by the corporation to keep its accounts or pay its employees in the town where it transacts its business. A corporation whose principal office was in the city of *H*, carried on manufacturing in *W*, where its accounts were kept and its employees paid. The secretary also resided in *W*, but went early every day to Hartford and

spent the entire day in the office of the company there, and all his duties were performed there. Held that he was not to be regarded as residing in *W* within the meaning of the statute, and that service made upon the clerk who kept the accounts and paid the employees there, was good.

*H*, an employee of the defendants, gave *P & Co.* a written order upon the defendants to pay them all his wages due and to become due. The defendants accepted the order in writing, and paid *H's* wages to *P & Co.* as they accrued for two years, when they were factorized as debtors of *H.* During the two years the firm of *P & Co.* had been twice changed by a member leaving and another being taken in, but with no change of the firm name, and *H* had agreed orally with the firm, after each change, that it should continue to take his wages under the order, but no notice of this agreement had been given to the defendants, who however knew by rumor of the changes in the firm. Held that the new firm could not hold the wages due at the time of the service of the factorizing process.

SCIRE FACIAS upon a process of foreign attachment; brought by appeal from a justice of the peace to the Superior Court in Windham County. Facts found and case reserved for advice. The case is fully stated in the opinion.

*J. L. Hunter,* for the plaintiff.

*E. B. Sumner,* for the defendants.

CARPENTER, J. Two questions arise in this case.

1. Was the service of the original process on the defendants good? The statute provides that when a corporation transacts business in any town other than that in which the secretary resides, service of foreign attachment may be made upon the corporation by leaving a copy with or at the usual place of abode of any agent or clerk employed by the corporation to keep the accounts or pay the employees in the town where the garnishee transacts business. Gen. Statutes, p. 403, sec. 12; slightly altered from sec. 291, p. 66, of the Revision of 1866. The service in this case was made by leaving a copy with the agent or clerk under this statute. The defendant now claims that the service was not good, for the reason that the facts of the case do not bring the corporation within the statute.

The facts are these. The corporation is located in Hartford, that is, its principal office or place of transacting its

corporate business is there. Its manufacturing is done in Willimantic. The account books are kept and the employees are paid in Willimantic. The secretary resides in Willimantic, but his business is in the home office in Hartford.

The claim now is, that inasmuch as the secretary actually resides in Willimantic, legal service cannot be made by leaving a copy with the agent or clerk under that statute, but can only be made by leaving a copy with the secretary as provided for in the general statute. A strict literal construction of the act will sustain that view. A liberal construction, which will give effect to the obvious intention of the legislature, will sustain the service.

It seems to be reasonably certain that the legislature intended to provide for all cases in which the corporation was located in one town and manufactured or carried on business in another. It could hardly have been intended that the accidental circumstance that the secretary resided in Willimantic, although all his official duties were performed in Hartford, should prevent the statute from applying. It will be difficult to assign a good reason why it should have that effect. If it does it leaves this and all similar cases open to all the mischief and inconvenience which the statute was intended to remedy.

We are disposed therefore to give the statute a broader construction, and thereby give effect to the obvious intention of the legislature. We think that the expression, "the town in which the secretary or clerk of such corporation resides," may properly be regarded as meaning an official residence, so to speak, or the town where he performs his duties as secretary or clerk. There are doubtless many instances in the state in which the corporation has its office or exercises its corporate powers in one town and transacts a large portion of its business and pays its employees in another and it may be distant town. The object of the section under consideration clearly was to provide an easy and convenient mode of serving a factorizing process on such corporations. We cannot believe that the legislature intended to attach any special importance to the domicile of the secretary. The statute

assumes, what is doubtless true in most cases, that the secretary will reside in the town where he performs his official duties.   If the secretary had resided in East Hartford instead of Willimantic the service would have been unquestionably good.   In this case it so happens that the secretary resided out of the town where the corporation was located and in a distant town where it carried on its business of manufacturing.   It is obvious that the inconvenience of serving process on the secretary is practically the same whether he resides in East Hartford or Willimantic.   To hold that the statute reme·dies the mischief in the one case and not in the other is adhering too closely to its letter and disregarding too much its spirit.

That this is a correct view of the statute will be more apparent by comparing the act under consideration with other portions of the statute relating to the same subject matter. This act was originally passed in 1857.   As it stands in the revision of 1866, which was in force when this service was made, it provides for service upon a corporation garnishee in the alternative—either as specified in the 289th section of the act or as provided in the act of 1857.   By a reference to the 289th section of the revision of 1866, page 66, it will be found that it contains no specific directions for serving a garnishee process on a corporation.   The meaning however is obvious, and that is, that it shall be served upon a corporation like other processes.   Now if we turn to the general statute providing for service upon a corporation, we shall find that, as the statute then stood, if strictly construed, it could have been made in one of two ways only—either by leaving a copy with the secretary, clerk, or cashier, or, if there is none, then at the banking house, manufacturing house or other principal place of business in this state.   There was no provision for making service by leaving a copy at the usual place of abode of the secretary or clerk.   It follows then, if the rule of construction now contended for should prevail, that service by leaving a copy at the usual place of abode of the secretary in Willimantic would not have been good.   This process could only have been served by leaving a copy with the secretary in

person, either in Hartford or in Willimantic. As he was usually in Hartford during business hours he could not ordinarily be served with process in Willimantic except in the evening or early morning. That illustrates the inconvenience of the general statute, and which the later act was intended to remedy. A process of foreign attachment issues in Willimantic in business hours. The secretary is in Hartford. If the defendants' claim is correct, and personal service is necessary, then it must be made in Hartford. Before that can be done the debt may be paid and the whole process defeated.

But suppose process may be made by leaving a copy at the secretary's usual place of abode; then a process may be served early in the day in the absence of the secretary; he returns at night and finds the copy; at the commencement of business hours the next day he causes notice to be given at the office or place where payments are made, but finds that the debtor was paid the day before and before the service of process. Thus the statute becomes a trap. A construction which leads to such results should if possible be avoided. To prevent such consequences the statute of 1857 was enacted. That statute should be so construed as to suppress the mischief and advance the remedy. We think the service was good.

2. The remaining question is, whether there had been a valid assignment of the debt before the service of the foreign attachment.

The writing which is claimed to have that effect reads as follows:

"WILLIMANTIC, Aug. 31st, 1872.

"WILLIMANTIC LINEN Co.—*Gentlemen:* Please pay to George H. Purinton & Co. all wages my due, or may be due, and oblige—Yours,        WILLIAM J. HUDSON."

That order was accepted by the defendants in writing. At that time Hudson was owing Purinton & Co. more than the amount due to him from the defendants. He was then in the defendants' employ and earning wages, and so continued until the attachment in October, 1874. In the spring of 1873 there was a change in the firm of George H. Purinton & Co.,

Charles L. Hawkins, a member of the firm, retiring, and one Hall taking his place. Subsequently there was another change, one Congdon succeeding Hall as a member of the firm.

The indebtedness from the defendants to Hudson, which was attached by the plaintiff, accrued after the last change. At that time the indebtedness from Hudson to Purinton & Co. existing at the time the order was given had been paid. There was a verbal agreement between Hudson and the successive firms of G. H. Purinton & Co., that the order should continue in force; but no notice of this agreement was given to the defendants. They heard by rumor of the changes in the firm and continued to pay Hudson's wages to Purinton & Co. as before.

Under these circumstances the question is, whether the order was a valid assignment of Hudson's wages to the present firm of G. H. Purinton & Co. Strictly speaking, the order was an assignment to the then existing firm only. It was not an assignment to any other firm of the same name which might thereafter come into existence. If it be allowed that the order as between the present firm of Purinton & Co. and Hudson, in connection with the parol agreement, might have the effect of an assignment, yet it was inoperative to transfer the legal title as against attaching creditors, for the reason that no notice was given of such agreement. Under our law notice of an assignment of a debt is necessary.

The fact that the defendants knew by public rumor that there had been a change in the partnership of Purinton & Co. was no notice to them that the new firm claimed any interest in Hudson's wages under this order.

The defendants continued to pay the wages of Hudson to the last firm just as they had done before, and so continued to the time of the attachment. But such payment is by no means equivalent to notice that the firm had an absolute legal right to all future earnings. Each payment would indicate that the defendants were justified in making it, and for the reason probably that all persons interested consented to it.

The order given to the old firm held by the new firm and

assented to by Hudson, would doubtless constitute an authority to pay to the new firm so long as such payment did not interfere with the rights of creditors. But when creditors attach and the transaction is to be tested by the application of legal principles, then the inquiry is whether there has been a technical transfer, including of course notice to the debtors. We think there has not been such a transfer, and that the attaching creditor is entitled to the sum attached.

We do not wish to be understood as holding that the order in this case would have been good if there had been no change in the firm of Purinton & Co. How long such an order would operate as an assignment of the wages earned from month to month we purposely leave undecided.

We advise the Superior Court that the plaintiff is entitled to judgment.

In this opinion the other judges concurred; except LOOMIS, J., who dissented.