### SIDNEY SLADE
vs.
### FRIEDA SLADE

Superior Court     Hartford County     File #52610

Present: Hon. JOHN A. CORNELL, Judge.

S. J. Allinson,                Attorney for the Plaintiff.

Edward J. Daly,             Attorney for the Defendant.

**MEMORANDUM FILED OCTOBER 19, 1936.**

CORNELL, J. The question raised by the instant motion concerns the interpretation to be given the phrase, "It (the Superior Court) may grant a divorce in any case in which **both the husband and wife are residents of this state**" as it is conjoined with, "if either shall have been incurably insane and shall have been confined in a hospital or asylum for the insane for at least five years next preceding the date of the complaint in such action". **Cum. Supp., Gen Stat., 1931-1935, #1597c.**

It arises because the evidence shows that the plaintiff husband and defendant wife were domiciled in Connecticut in the early part of 1929; that in August of that year the defendant left for New York ostensibly to visit relatives and that while in New York she suffered a mental affliction as a result of which she was confined in Hudson River State Hospital where she remained until March 3, 1930, on which latter date she was transferred to the Northampton State Hospital, Department of Mental Diseases at Northampton, Mass., where she has since been and still is.

In its memorandum of decision, filed on or about August 10th, 1936, this court refused a decree for plaintiff, though the cause was uncontested, assigning as a reason therefor, that plaintiff had not proved that the defendant was a "resident" of this state within the intendment of the applicable provisions of the statute, quoted supra. Plaintiff claims that this is erroneous and asks that the court review its decision, change its ruling in the respect mentioned, and enter judgment in his favor.

The contention stressed in support of the motion is that the word "residence" is employed in the phrase in question in the sense of "domicile" and that since the defendant wife had her domicile with her husband in Connecticut at the time she left the state it continued with him here in the ab-

sence of evidence of the existence of circumstances justifying her in establishing one of her own elsewhere, while competent, and in view of her inability to do so after she became incompetent. The claim is that her domicile still persists, therefore, with her husband in this state, although she is personally present in another and has been for the period referred to, and so is a "resident" here within the meaning of the statute.

It may be granted that the defendant wife's domicile is still where her husband's is and that if "residence" as used in the statute means domicile, the plaintiff is entitled, under all the evidence, to a decree. This presents flatly the question, is the term employed in that sense, or some other?

Particularly, in statutes, very few words are used to indicate so wide a variety of meaning. In our own jurisdiction an amplitude of examples is evidence of this.* (See footnote, p. 250.)

The seeming vagaries in these apparent conflicts disappear when it is observed that the conclusions reached in them were arrived at by giving to the word "resident" or "residence" the significance required by its presence in the particular statute under consideration in each case. The same situation has confronted the court in statutes dealing with the "residence" required to confer jurisdiction in divorce actions. As noted in **Morgan vs. Morgan, 103 Conn. 189, 193,** "The term 'residence' when found in statutes defining jurisdiction for divorce may or may not be synonomous with domicil. Much depends on the form and substantive effect of the statute as well as on the context in which the word is used", and, of course, in determining that intent, the past pronouncements of the Supreme Court of Errors must be consulted for such aid as they may give and, especially so, if they evince a consistency indicative of a policy.

One of the paramount considerations discernible from an examination of these is: that unless a statute be so plain in its expressed intention as to leave no opportunity for another reasonable construction, a requirement of residence in a divorce act shall not be so interpreted as to provide opportunity for persons to seek the aid of this court by a mere colorable presence here, only. **Sawtell vs. Sawtell, 17 Conn. 284; Morgan vs. Morgan, 103 Conn. 189, 192, 194.**

The ascertainment of the true legislative intention in pre-

scribing requirements of residence for the maintenance of an action on the ground alleged in the instant case, cannot be accomplished by limiting the inquiry to the facts peculiar to the situation presented here. All of the conditions reasonably to be anticipated in the subject-matter with which the statute in this respect deals, must be taken into account. Some light in determining whether "residence" is employed in it in the sense of domicil may be gleaned by seeing to what results the adoption of such a construction would lead.

Thus, domicile is defined as consisting of two elements, viz., (1) an actual residence in a place; (2) accompanied by a present intention to make such place the ordinary dwelling place, that is, the home, of the person. **Foss vs. Foss, 105 Conn. 502, 506, 508; Mills vs. Mills, 119 Conn., 612, 618.** But if the requisite present intention to remain be existent then, no particular duration of residence is necessary. **Foss vs. Foss, supra, p. 505; McDonald vs. Hartford Trust Co. 104 Conn. 169, 179.** Domicile eventuates at the instant that actual residence becomes coupled with animus manendi. **Gildersleeve vs. Gildersleeve, 88 Conn. 689, 695.** This may be under some circumstances, but a week or even a day. **19 C.J. p. 403, #2.**

It has been held that a wife's domicile is ordinarily where her husband's is. **McDonald vs. Hugo, 93 Conn. 360, 363; Foss vs. Foss, supra, 506,** but that she may have one independent from his by reason of conduct on his part justifying a separation. **Torlonia vs. Torlonia, 108 Conn. 292, 300.** There is strong intimation in the last named case that other circumstances may exist which would confer a right upon her to establish a domicile separate and distinct from her husband. In the absence of a showing of some special condition, however, it seems reasonably safe to assume that a wife's domicile remains at the place where her husband's is, and that this is the case where a wife becomes insane and is confined in an appropriate institution while living with her husband. Having become incompetent and incarcerated in an institution she would ordinarily be unable to establish a new domicile, because, usually, of her incapacity to exercise the essential volition. **19 C.J. p. 417, #37; Beale, Conflict of Laws (1935) Vol. 1 p. 159.** See, too, **Clark vs. Whitaker, 18 Conn. 543, 550.**

The statute does not expressly require that both parties be "residents" in this state during the five-year period of confinement of one of them in an institution for the insane. Its phraseology is equally compatible with their residence in another state or country during such time, if they both be "residents" here when the petition is filed and the confinement be in effect at the date of the complaint.

Under such circumstances, if "residence" is to be interpreted as meaning domicile, and no more than that, there would be nothing to prevent a husband whose domicile was in another state and whose wife was confined while living with him, in an institution for the insane there for the statutory period and continued to be at the date of the complaint, from removing into Connecticut, establishing his domicile here upon the briefest of residence and on the heels of it being granted a divorce. In such a case only his good faith in respect of the establishment of an actual residence, however short in duration and the existence of his then present intention to remain, could be questioned, even though he took such action with the definite purpose of obtaining the benefit of such provisions of the statute.

> "Whatever the motive or purpose actuating a change of domicile may be, the tests to be applied in determining whether one has, in fact, taken place, do not include them. The sole conditions are (1) an actual change of residence and (2) the absence of an intention to remove elsewhere. But if the animus really exists to remain there permanently, the fact that the motive of removal is to procure a divorce, is immaterial." **Gildersleeve vs. Gildersleeve, 88 C. 689, 694.**

It is apparent, on that theory of domicile that the requirement that "both the husband and wife" must be "residents" of this state in such a case must be met, as to the wife, only by resort to that fictional domicile on her part which by mere theoretical invention follows her husband's wherever the latter may be. But if this were the legislative intent, then the requirement that **both** husband and wife be residents of this state becomes meaningless for on the domiciliary theory of residence, the defendant wife's "residence" would be here from the mere circumstance that her husband's *is*.

Moreover, pursuing the example further, the court would

have jurisdiction to grant a divorce for the named cause, even though neither party were actually present in the state, and the defendant wife, confined elsewhere, had never been here. For having established a domicile here, a plaintiff husband might thereafter have an actual residence in any other state or foreign country (Clegg vs. Bishop, 105 Conn. 564, 570; McDonald vs. Hartford Trust Co. 104 Conn., 169, 178; Salem vs. Lyme, 29 Conn., 74, 79), since his domicile in Connecticut once established, would persist until he elected to make another in some other place. Foss vs. Foss, supra, 105 Conn. 502, 506; McDonald vs. Hartford Trust Co., supra, 177; Mills vs. Mills, 119 Conn. 612, 618; Morgan vs. Morgan, supra, p. 196. Thus, this court might be called upon to dissolve the marriage of parties while both were actually in absentia.

Again, the statute, of course, clothes the wife as well as the husband with the right to apply for a divorce for the cause in question. Conferring that right upon her it must conceive that she will be able to satisfy the jurisdictional requirements.

But in a case where both are domiciled together in another state and the husband while so living with his wife becomes insane and is thereupon confined in the requisite type of institution for the stated period there and thereafter the wife comes to Connecticut and in fact and law establishes a domicile here, it is difficult to see how the jurisdictional requirement of residence can be met, if "residence" is to be taken to mean domicile.

For while it is undoubtedly true that upon her husband's becoming insane and being confined in an institution for the care of the insane, the wife would be free to establish a domicile of her own (McKnight vs. Dudley, 148 Fed. 204, 78 CCA 162), I know of no authority for the proposition that the confined husband's domicile would follow his wife's, wherever she might chose to locate her's.

But the statute requires that "both the husband and wife" be residents of this state and if this means that they must both be domiciled here, it is difficult to perceive how a wife, however long continued her domicile and actual incidental residence in this state might be, could satisfy that jurisdictional requirement, if her husband continued to be confined in an institution in another state or country at the date of

her complaint.

A construction of the statute which would invite the vice pointed out supra and in other respects leads to the illogical results mentioned should not prevail over one not marked by these incidents and more consistent with the policy of our divorce law as indicated by statutory enactment and judicial expression.

The minimum jurisdictional requirement to enable a court to grant a divorce, in the absence of a statute expressly dispensing with that necessity, is domicile of one of the parties. Foss vs. Foss, supra, p. 505. This is essential where there is no requirement that either of the parties actually live in this state for a definite period before commencing action. Foss vs. Foss, supra. And equally so even though one of the parties actually live here for a continuous period specified by statute.

Morgan vs. Morgan, supra, 195; Torlonia vs. Torlonia, supra, 300.

There is nothing in the provision of the statute which is the subject of instant attention which dispenses with the necessity of domicile of one of the parties common to actions of divorce on all other grounds. If residence meant only domicile there would be little point in mentioning it.

"The provision in question, on the construction of it claimed by defendants would be a mere assertion of the ancient and well-known general principle and was wholly unnecessary; and it cannot be supposed that the legislature would have inserted into the act a provision which was entirely useless." Town of Waterbury vs. Town of Bethany, 18 Conn. 424, 430.

Some meaning must be given the word "residence". Since domicile of one party is a necessary condition precedent, even in the absence of express statutory requirement, but domicile when once established is consistent with one's actual residence in a foreign state or country, it seems reasonable to give to the word "residence" insofar as it applies to the plaintiff, the same interpretation as it received in Morgan vs. Morgan, supra, viz., as meaning one's actual living here in addition to one's domicile here. And as to a defendant, the same meaning as applies to a plaintiff, viz., his or her actual living in

this state, which, in view of the statutory requirement that defendant must have been confined in an institution at the date of the complaint, must mean that he or she be so confined in an institution **in this state** when the action is commenced. It is believed that additional support is lent to the conclusion by the provisions of **General Statutes, Rev. 1930, #5178,** which prescribe the requirements of service in an action for divorce on the ground of insanity.

The court will, of course, at some time or other be presented with a situation where a wife having established a domicile of her own in this state for justifiable reasons whose husband is domiciled in another state, becomes insane and after she has been confined in an institution here for the requisite statutory period, the husband comes here and applies for a divorce on the ground of his wife's insanity. It is not impossible to foresee that in such an instance the question may arise whether the wife has such a domicile here as will give the court jurisdiction in case the husband's residence is not attended with the necessary elements to enable the court to find that he, also, has effected a domicile here.

Neither that, nor the question of the length of "residence" of the plaintiff or defendant or both, necessary to satisfy the statutory requirement on the point is involved in the present case. The ruling here is limited to the facts presented and the conclusions reached upon them, which, in brief, are: the plaintiff is domiciled in Connecticut and was when he brought his action; so, also, the defendant, since there is no evidence that she established a domicile of her own after leaving plaintiff and before she became insane and was confined; that plaintiff's domicile satisfies the jurisdictional requirement that independent of statutes, at least one of the parties must have a domicile here, irrespective of an actual residence in order to maintain an action for divorce; that in addition to such domicile of the plaintiff here, he must meet two other statutory requirements, viz., that beside his domicile he must be an actual resident when he files his petition and (2) whether the confined wife be domiciled here or not, she must be actually physically present and living (which means confined) in such an institution as the statute mentions **at the date of the complaint.**

In this case, the requisite of domicile of one of the parties

is met in the person of the plaintiff. So is the requirement of actual residence, as it applies to him. As to the defendant, the requisite actual residence in this state comprehended in the presence of the word "both" in the statute is lacking. The motion is, hence, denied.

---

\* "Resident" or "residence" has been held to mean a mere temporary place of living (in contradistinction to the element of permanency combined with present intention to remain) as synonomous with "usual place of abode" in a statute prescribing the manner in which civil process shall be served, in Clegg vs. Bishop, 105 Conn. 564, 570, but as requiring no place of abode at all in another statute concerning service of garnishee process on corporations, on the part of a secretary of one who had his domicile in one city and performed his official duties in another to which latter he travelled each day, in Adams vs. Willimantic Linen Co., 46 Conn. 320. One is said to be a resident of this state within the meaning of statutes regulating registration of automobiles if only temporarily present beyond a time named in such statutes (and so may be a resident of two or more states), as held in Morse vs. Lash Motor Co., Inc., 107 Conn. 137, 142; likewise, within the meaning of a phrase in a private act, incorporating a school for the education of young persons residing in a town, while one is present only for the purpose of receiving instruction at such school, as determined in Hewitt vs. Wheeler School & Library, 82 Conn. 188, 194—but to be a resident elector in New Haven under provisions of the city charter stating qualifications to be eligible to hold certain public offices enumerated therein, must have a domicile there as said in Hackett vs. New Haven, 103 Conn. 157; nor can one be taxed on the assessment lists of a town for personal property within the meaning of the word "resides" as used in the applicable statute, who has not a domicile there as stated in Hartford vs. Champion, 58 Conn. 268. And while the requirement of residence for the specified number of years to gain a settlement under the pauper statutes, is held to mean actual domicile during the period (Town of Salem vs. Town of Lyme, 29 Conn. 74), yet under others, residence means but the temporary presence of a pauper within a town. Trumbull vs. Moss., 28 Conn. 253; Hartford Hospital vs. Glastonbury, 112 Conn. 403, 406 and see Town of Waterbury vs. Town of Bethany, 18 Conn. 424, 429.

As to jurisdiction dependent on residence (aside from questions arising under statutes relating to divorces), a probate court posssesses it insofar as to permit it to appoint a guardian of a minor who is temporarily living within its precincts though his domicile is elsewhere (Kelsey vs. Green, 69 Conn. 291, 301) and may exert it in committing one as an inebriate to an institution in a proceeding based upon the latter's residence within the probate district, even though the only "residence" shown is enforced confinement in an institution under a prior void commitment, if while so held in durance the alleged inebriate solicit treatment and otherwise acquiesce in his

presence there (Schutte vs. Douglas, 90 Conn. 529, 535). But the jurisdiction of the City Court of New Haven was made dependent upon the residence of one of the parties to an action returned to it within the limits of New Haven, and "residence" as therein employed was held to mean domicile and not a mere temporary living there. Charter Oak Bank vs. Reed, 45 Conn. 391, 395. Domicile here seems to be indicated by the language used in the opinion in Shaw vs. Jackson, 92 Conn. 345, 347, in interpreting the word "inhabitant" to exempt one who has previously lived out of this state from the operation of the provision of the statute requiring a plaintiff who is not an inhabitant to give bond for costs (Shaw vs. Jackson, 92 Conn., 345, 347), while of course, a corporation organized in a foreign state may become a resident here within the meaning of certain statutes. Lovejoy vs. Isbell, 70 Conn. 557, 561.