[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE DEFENDANT'S MOTION TO DISMISS (DATED MAY 17, 1991)
The plaintiff, Bruce Paul Mindich, by writ, summons and complaint initiated a dissolution of marriage action against the defendant, Amelia R. Rosenfeld Mindich, claiming by way of relief; a dissolution of marriage, custody of minor children, and equitable division of assets.
Said writ, summons and complaint is dated February 26, 1991, stamped as filed with the Superior Court Bridgeport March 12, 1991 and returnable March 26, 1991. The sheriff's return dated March 5, 1991 reflects in hand personal service on the defendant in Greenwich, Connecticut.
The defendant's motion to dismiss moves that the complaint be dismissed for one or both of the following reasons: CT Page 1603
1. The court lacks subject matter jurisdiction over this matter because plaintiff was not a resident of the state within the meaning of Conn. Gen. Stats. 46b-44(a), when he filed the complaint, and
2. The court lacks subject matter jurisdiction over the parties' children as required by Conn. Gen. Stats. 46b-93.
The plaintiff has conceded that the court does not have subject matter jurisdiction over the parties' children.
Connecticut General Statutes 46b-44(a) provides:
 "A complaint for dissolution of a marriage. . . .may be filed at any time after either party has established residence in this state."
The singular issue before the court is whether the plaintiff has complied with the provisions of Conn. Gen. Stats.46b-44(a), i.e., has established residence in this state on or before March 12, 1991, the date of filing this action.
Although the plaintiff alleges in paragraph 2 of his complaint he "has resided in this state since June 8, 1990," it is the defendant's burden of proving her allegation of lack of jurisdiction. Rice v. Rice, 134 Conn. 440, 447 (1948); Cugini v. Cugini, 13 Conn. App. 632, 635 (1988); Taylor v. Taylor,168 Conn. 619, 620 (1975).
Black's Law Dictionary defines "residence" as follows: Place where one actually lives or has his home, a person's dwelling place or place of habitation; Perez v. Health Social Services, 91 N.M. 334. Personal presence at some place of abode with no present intention of definite and early removal and with purpose to remain for undetermined period, not infrequently, but not necessarily combined with design to stay permanently. T.P. Laboratories, Inc. v. Huge, D.C. Md., 197 F. Sup. 860, 865.
Residence implies something more than mere physical presence and something less than domicile. Petition of Castrinakis, D.C. Md., 179 F. Supp. 444, 445. The terms "resident" and "residence" have no precise legal meaning sometimes they mean domicile plus physical presence, and sometimes they mean something less than domicile. Willenbrock CT Page 1604 v. Rogers, C.A. Pa., 255 F.2d 236, 237.
Black's Law Dictionary defines "resident" as follows: Any person who occupies a dwelling within the state, has a present intent to remain within the state for a period of time, and manifests the genuineness of that intent by establishing an ongoing physical presence within the state together with indicia that his presence with the state is something other than merely transitory in nature. The word `resident' when used as a noun, means a dweller, habitant or occupant; one who resides or dwells in a place for a period of more, or less, duration; it signifies one having a residence, or one who resides or abides. Hanson v. P.A. Peterson Home Ass'n., 35 Ill. App.2d 134.
Black's Law Dictionary defines "legal residence" as follows: The place of domicile or permanent abode as distinguished from temporary residence. Permanent fixed place of abode which person intends to be as residence and to which he intends to return despite temporary residences elsewhere or despite temporary absences. U.S. v. Calhoun, C.A. Fla.,566 F.2d 969, 973.
Webster's Third New International Dictionary (Unabridged) 1971 defines "reside" as follows: to dwell permanently or continuously; have a settled abode for a time, have one's residence or domicile. "Residence" is defined as follows: the act or fact of abiding or dwelling in a place for some time; an act of making ones home in a place; the place where one actually lives or has his home as distinguished from his technical domicile.
Residency is something more than transitory but less than domicile, which requires residency coupled with the intent to remain. As applied in Connecticut domestic relations jurisprudence, there cannot be a finding of residence without actual substantial physical presence. Morgan v. Morgan,103 Conn. 189, 194 (1925); Marshall v. Marshall, 130 Conn. 655, 656
(1944).
 "unless a statute be so plain in it's expressed intention as to leave no opportunity for another reasonable construction, a requirement of residence in a divorce act shall not be so interpreted as to provide opportunity for CT Page 1605 persons to seek the aid of this court by a mere colorable presence here only."
Slade v. Slade, 4 Conn. Sup. 242, 244 (1936).
A determination of the plaintiff's residency or lack thereof within the purview of Conn. Gen. Stats. 46b-44(a) is a factual analysis of the testimony and documentary evidence presented in this case.
It is agreed that the defendant herein is a resident-domiciliary of the State of New York. The plaintiff arranged for personal in hand service on the defendant upon her voluntary visit to an employment agency in Greenwich. Although the defendant cries foul, the service was legal and proper because the defendant was not fraudulently or illegally enticed into entering the State of Connecticut.
Upon reading said summons and complaint, the defendant was surprised to learn that the plaintiff claimed to reside at 45 Hale Lane, Darien, Connecticut and had so resided there since June 8, 1990. The defendant testified that this was the first notice or information she or her teenage daughters had that the plaintiff claimed to be a resident of the State of Connecticut. The plaintiff never told the defendant or their daughters that he lived in Connecticut.
After service upon her, the defendant bought a map of Darien, Connecticut and proceeded to the residential condominium identified as 45 Hale Lane, Darien, Connecticut. Upon her arrival at 45 Hale Lane she knocked on the front door but there was no response. She observed that there were not any curtains on the windows and the premises appeared vacant and nobody lived there. Although the defendant did not try to gain entry to the premise she looked in accessible windows and observed it was empty of all furniture.
March 5, 1991 (day of service) was a Tuesday. Thereupon the defendant engaged Howard Weinstein, a private investigator to confirm and substantiate her aforesaid observations and conclusions.
On or about March 10, 1991 Howard Weinstein visited in, on and about said premises at 45 Hale Lane and took a series of photographs. Defendant's Exhibit 1. These photographs show CT Page 1606 that the premises were virtually empty and an absence of furnishing and furniture except a bed and dresser. There was not any drapes, curtains or shades on the windows. There are not any wall hangings. There are not any pots or pans, the refrigerator is empty and still contained the consumer information tag; the kitchen cupboards are bare. There is no radio, television or books. The bathroom is devoid of any toilet articles or even toilet paper. The shower curtain is not hung nor are the shower curtain rings installed or utilized. The carpets show vacuum tracks and are totally devoid of any indication.
Howard Weinstein further testified that the "premises did not appear to be occupied," the fireplace did not show any use, the microwave oven or oven did not appear to have been used, the cupboards were empty, there was no food or utensils, no soap in the bathroom, no shower curtain hung, closets in bedroom were empty, dresser(s) was empty, linen closet was empty, coat closet was empty. Howard Weinstein concluded that the premises were unoccupied at the time because there was no clothing, no food and the premises appeared untouched.
The plaintiff is a cardiac/thoracic surgeon who has operating privileges at Manhattan, New York, Ridgewood, New Jersey and Passaic, New Jersey. Attorney Helene Brick-Cabot, his business manager, testified that the plaintiff performs 750-800 operations per year. Although the plaintiff has homes in Brooklyn, Ridgewood, New Jersey, Wurtsboro, New York and the condominium in Darien, he typically slept at the aforesaid hospitals six nights a week and would only return home on Saturday afternoon and leave Sunday evening. This was his typical pattern for years. In addition, it was the plaintiff's habit to call home every evening.
The genesis of the plaintiff's alleged residence in Connecticut is the plaintiff's acquisition of the condominium identified as 45 Hale Lane, Darien, Connecticut on June 8, 1990. Plaintiff's Exhibit C (Closing package) and Plaintiff's Exhibit L (Statutory Warranty Deed). Both of these exhibits indicate the address of Bruce P. Mindich as 45 Hale Lane, Darien, Connecticut. A review of Exhibit C indicates a purchase agreement dated June 1, 1990 yet no binder or down payment on the purchase agreement and a closing a week later on June 8, 1999. The closing was handled and attended by Attorney Helene Brick-Cabot. The plaintiff did not attend the closing. CT Page 1607
There was testimony that 45 Hale Lane was the model condominium for Middlesex Common. The plaintiff purchased its furnishings for the consideration of $1,300.00 which included a bed covered with a blue bedspread and pillow. Although Howard Weinstein testified that he did not recall whether there were blankets or sheets on said bed, this court observes without finding that is unlikely that the developer would provide sheets or blankets for a bed covered with a bedspread.
The plaintiff introduced certain evidence in and effort to prove his alleged residence. The plaintiff introduced through his CPA, Alex Solomon, a copy of a check in the amount of $227,106.00, representing a refund of taxes for the tax year 1990. Plaintiff's Exhibit A. The check indicates "Mindich-Bruce P. 45-Hale LN Darien Ct." Mr. Solomon testified that 45 Hale Lane was used by him in the preparation of the subject tax return at the instruction of the plaintiff. Mr. Solomon also testified that some time in 1985, when he first became associated with the plaintiff, he suggested that the plaintiff acquire a Connecticut residence for tax purposes in that Connecticut then did not have an income tax (per se) and there was a strong probability of decreasing the plaintiff's tax liability. However, Mr. Solomon was not privy to the transaction to acquire said 45 Hale Lane, Darien, Connecticut. Plaintiff's Exhibit 1 is not convincing evidence as to the residency question herein as there is no evidence that "residence" for New York state taxes is equal to or commensurate with "residence" for domestic jurisdiction in Connecticut. Nor was there testimony that the plaintiff's residence was verified or investigated. Further, the plaintiff's instruction to Mr. Solomon to list his address as 45 Hale Lane, Darien was self-serving for a least tax purposes. Lastly, Plaintiff's Exhibit 1 does not specifically focus in on the time frame in question.
Mr. Solomon also testified that he prepared State of Connecticut income tax returns. Obviously this is necessary and consistent with the plaintiff's alleged residence. It is done for economic reasons and again is self-serving.
The plaintiff introduced through Alex Solomon a Notice and Demand for Payment of Tax Due. Plaintiff's Exhibit B. This Notice refers to Mindich-Bruce P. Mindich, Amelia R. 40? 45? Hale Lane, Darien, Connecticut. Presumably this was introduced to show the address of Hale Lane, Darien. However, this Exhibit B is not credible to support the plaintiff's contention that his residence was 45 Hale Lane, Darien Connecticut. Firstly, it CT Page 1608 indicates Amelia R. Mindich, 45 Hale Lane, Darien, Connecticut. Amelia R. Mindich testified she never knew of 45 Hale Lane until March 5, 1991 and she testified that she never went there other than on March 5, 1991. It is uncontroverted that this is not her residence. Furthermore, Plaintiff's Exhibit B raises more questions than it resolves. It refers to an original notice sent on 05/26/92. Did the mails fail or did the plaintiff fail to pick up the notice or did someone else fail to pick it up? Plaintiff's Exhibit B speaks in terms of 1992 and although somewhat illegible, it refers to either "personal" or "permanent" income. Query, why would the State of New York tax the income of plaintiff and his spouse, if they were residents of the State of Connecticut. Lastly, Plaintiff's Exhibit B does not focus on the time frame in question.
Plaintiff's Exhibit D, Bio-Manufacturing, Inc. Subscription Agreement lists the mailing address of the plaintiff as 45 Hale Lane, Darien, Connecticut. It is curious to note that the word "mailing" has been typed on this document perhaps to distinguish a "mailing" address from a residential address. Query, was this done for tax purposes? This document dated August 8, 1990 does not focus on the time frame in question. The attached letters dated February 21, 1991 and proxy merely respect the initial listing of 45 Hale Lane as the plaintiff's mailing address and do not constitute credible evidence to establish the plaintiff's residence incident to the time frame in question.
Plaintiff's Exhibit E, "Stock Purchase Agreement" refers to the plaintiff as residing at 45 Hale Lane, Darien, Connecticut. This document does not offer credible evidence regarding the plaintiff's residence incident to the time frame in question, as it is dated July 1, 1991, several months after the time frame in question.
Plaintiff's Exhibit F, Re-appointment Application for St. Lukes/Roosevelt dated April 26, 1991; Plaintiff's Exhibit G, Application for Re-appointment to General Hospital at Passaic (undated but refers to 1992 and 1993); Plaintiff's Exhibit H, Application for Re-appointment re Valley Hospital dated August 7, 1991 all list the plaintiff's address as 45 Hale Lane, Darien, Connecticut. These documents do not offer credible evidence regarding the plaintiff's residence incident to the time frame in question as they are all dated after the time frame in question. CT Page 1609
The plaintiff apparently funded a checking account at Union Trust on August 24, 1990. Plaintiff's Exhibit I. This checking account was used to pay bills incident to the condominium at 45 Hale Lane, Darien, Connecticut. However, all bills were picked up and paid by Attorney Helene Cabot-Brick.
He also funded an Investment Saving Account in the amount of $90,000.00. The documents incident to the Investment Saving Account are dated March 19, 1991, March 20, 1991 and March 25, 1991. This transaction is apparently to fund an overdrawn checking account, eliminate NSF charges and avoid further overdrawing. See Union Trust statement dated March 13, 1991. The Investment Savings Account documents listing the plaintiff's address as 45 Hale Lane, Darien, Connecticut merely follow the original documents of August 24, 1990 and do not establish the plaintiff's residence incident to the time frame in question.
Plaintiff's Exhibit J, Bruce P. Mindich check #145 dated 7/9/91 payable to Leading Interiors represents payment for recutting drapes. This check is dated several months after the time frame in question and does not establish the plaintiff's residence incident to the time frame in question.
Plaintiff's Exhibit K, State of Connecticut Medical License, lists the plaintiff's address as 45 Hale Lane, Darien, Connecticut. There was testimony that residence in Connecticut is not necessary for the issuance of a medical license. The application is dated January 11, 1991. Again, this does not establish the plaintiff's residence incident to the time frame in question.
The plaintiff's mother died in June 1990. The plaintiff and his brother inherited their mother's furniture and household furnishing. The plaintiff testified that he intended to furnish the condominium with his "mother's" furnishing, however his brother procrastinated in dividing said furniture and furnishing. The plaintiff introduced North American — ORDER FOR SERVICE under contract #CD5392. Plaintiff's Exhibit M. This document indicates a loading date of 04/10/91 and a delivery date of 04/11/91. This document is signed by the purported agent for North American under date of 3/26/91. However, it is not signed by a shipper or shipper's representative, e.g., plaintiff or his brother or Attorney Helene Cabot-Brick. This document has several counterparts and the court notes curiously that the document is still intact and the counterparts have not CT Page 1610 been distributed to the respective parties. Query, how were the goods shipped yet the original documents retained. At best this document would show furniture delivered to 45 Hale Lane, Darien, Connecticut on or about 04-10-91 which is after the time frame in question and therefore would not establish the plaintiff's residence incident to the time frame in question.
As previously stated the plaintiff called home every night and weekend to speak to his children. Yet the copies of the SNET Company telephone bills submitted (Defendant's Exhibit 2) for September to December 1991 inclusive do not show any long distance telephone calls. Although the plaintiff testified that he did make calls to his daughters from his car phone, it is incredulous to think that no long distance telephone calls would be made during a four month period in view of his family, business and financial ventures and especially his extensive and demanding medical practice.
The court also notes that electric consumption at 45 Hale Lane was constant for the months of September 1991 to February 1992 (Defendant's Exhibit 2 — bar graph) indicating that said premises were vacant.
This court also notes that the plaintiff has not demonstrated any tangible contact with the Town of Darien such as a library card, nor any social, business, entertainment or religious. Further the plaintiff had very ill-defined ideas as to the geographical location of Darien, Connecticut.
It is this court's opinion that 45 Hale Lane, Darien, Connecticut exists only for tax purposes as far as the plaintiff is concerned. This asset is virtually de minimis in comparison to his total financial and business holding.
Therefore, it is the inescapable conclusion that 45 Hale Lane, Darien, Connecticut is not the residence of the plaintiff within the purview of Conn. Gen. Stats. 46b-44(a) and he did not have the legal status to file said complaint.
The defendant's motion to dismiss is granted.
As a postscript, the court points out that the file contains a motion to supplement record (dated January 8, 1993, filed by the defendant) and objection to motion to supplement record (dated January 13, 1993 filed by the plaintiff). CT Page 1611 Although the court has read these documents, such documents and the substance thereof did not affect the court's decision herein.
JOHN W. MORAN, JUDGE