[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: MOTION TO DISMISS
The plaintiff seeks to recover from the defendants, Kweku Hanson and his former wife, Jennie Hanson, also known as Jennie White (hereinafter "White"), for the costs of medical treatment provided to Kweku Hanson in October and November of 1993. The defendant White has moved to dismiss, based on (1) alleged improper service of process and (2) the alleged failure of the plaintiff's complaint to state a claim upon which relief may be granted.
As to the issue of insufficiency of process, the sheriff's return indicates that after personally serving Hanson at his place of abode, he then explained that he had a writ for Hanson's wife Jennie. A conversation of sorts with the defendants ensued in which it was made apparent that White (a) was Jennie; (b) was no longer married to Hanson, and (c) did not live at that address. The sheriff, sensing "that all cooperation was going to cease", opened the screen door and threw the papers at White, striking her on the arm. The plaintiff apparently concedes that Hanson's residence was not also White's usual place of abode, and it thus asserts that the sheriff, through the actions described in his return, accomplished personal service.
The defendant's affidavit is generally in accord with the material elements contained within the sheriff's return. She stresses, however, that, at Hanson's request, she never read the contents of the papers which the sheriff threw at her and has become acquainted with those contents only through Hanson's oral rendition of them to her. She appears to claim that this somehow renders service incomplete.
Although White appears to be arguing, in her memorandum of law in support of her motion to dismiss, the claim that abode service was not effected, the real issue would appear to be whether personal service was effected. On this issue, the following commentary is instructive:
 "While personal service of process does not require `in hand' delivery, it should not become a game of wiles and tricks and a defendant should not be able to defeat CT Page 11770 service simply by refusing to accept the papers or by instructing others to reject service. Even though a defendant refuses physical acceptance of a summons, service is complete if a defendant is in close proximity to a process server under such circumstances that a reasonable person would be convinced that personal service of the summons is being attempted. Delivery of a summons to the person to be served who resists service may be accomplished by leaving it in his general vicinity, such as on the floor inside the residence near such person, informing him that the process server is so doing. A process server may leave the summons outside of the door of a structure, informing the defendant that he is so doing, where the defendant interposes the door between himself and the process server. Valid delivery of summons was made where the process server loudly stated through the door that [defendant] had been legally served after such [defendant], upon being told that the server had legal papers for her, slammed the door and knocked the papers from the server's hand.
 At least in cases where the defendant has attempted to evade service, service was found sufficient, despite a failure to manually deliver the process, where the marshall left the papers on the seat of the defendant's vehicle, pitched the papers through a hole in the screen door of the hiding defendant's apartment, or threw the documents over the defendant's fence . . . .". 62B Am.Jur.2d, Refusal to Accept Papers 204.
The service of process statute, Connecticut General Statutes § 52-54, seeks to ensure actual notice to the defendant. That objective is furthered by requiring the serving officer to report his doings on his return. Zarillo v. Peck, 33 Conn. Sup. 676
(1976). See, also, Moore v. Moore, 15 Conn. Sup. 17 (1947);Clegg v. Bishop, 105 Conn. 564 (1927); Seifert v. April,
CT Page 117712 Conn. Sup. 134 (1935); Miller v. Howell, 14 Conn. Sup. 375 (1946).
In her affidavit, White admits the essential allegations of the sheriff's return, that she had actual knowledge that a sheriff had served her, and that she was being named as a co-defendant in a suit against her ex-husband for his hospital debts. See Affidavit, Paragraphs 17, 18. Actual notice "weighs heavily in favor of the plaintiff; the defendant cannot be heard to say that he was prejudiced in any manner whatsoever,"Plonski v. Halloran, 36 Conn. Sup. 335, 337 (1980). Based on the return and the affidavit, the court finds that White was properly served and had actual knowledge of the action and her involvement in it. That she chose not to read the complaint does not negate that knowledge.
The second basis of White's motion to dismiss is her claim that she is immune from liability pursuant to Connecticut General Statutes § 46b-37 (d) which provides:
 "No action may be maintained against either spouse under the provisions of this section either during or after any period of separation from the other spouse, for any liability incurred by the other spouse during the separation, if, during the separation the spouse who is liable for support of the other spouse has provided the other spouse with reasonable support."
The decision as to whether this claim has any merit must wait until another day. Although the motion to dismiss is the proper vehicle for challenging the court's jurisdiction,Upson v. State, 190 Conn. 622 (1983), a claim based on Connecticut General Statutes § 46b-37 (d) is not jurisdictional and is more appropriately raised as a special defense which can be tested either at trial or on summary judgment.
For the above reasons, the defendant Jennie White's motion to dismiss is denied.
Jonathan E. Silbert, Judge CT Page 11772