[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
ON DEFENDANT'S MOTION TO DISMISS PENDENTE LITE DATED OCTOBER 16, 2001
This court heard the above motion or December 19 and 20, 2000; February 9, 2001; and concluded the hearing on March 14, 2001. Both parties testified and were cross-examined, numerous exhibits were entered into evidence, and comprehensive briefs were prepared and presented by capable counsel.
The ultimate issue for this court to decide is whether Nevada or Connecticut has jurisdiction to dissolve this marriage.
By way of background, the plaintiff had served a writ, summons and complaint to dissolve his marriage by serving the defendant at their residence in Redding, Connecticut, on July 10, 2000. Since she was not there when the sheriff came to serve her, and service was made by his leaving the writ, summons and complaint at 85 Diamond Hill Road in Redding. On July 14, 2000, the plaintiff's attorney applied for and obtained an order of notice from the Superior Court at Danbury, Connecticut, to mail these documents to her residences in Carnelian Bay, California and at the condominium apartment in Las Vegas, Nevada. The defendant concedes she received the writ, summons and complaint at both of these residences.
In her testimony, she admitted having received them. She immediately brought the complaint to her attorney in Las Vegas, Nevada, who prepared a complaint to dissolve her marriage in Nevada, and personally served it on the plaintiff in Redding, Connecticut. The defendant filed the Nevada action on July 20, 2000, in CT Page 5056 the District Court of Nevada.
On August 8, 2000, the plaintiff, through his attorney, filed a motion to dismiss the Nevada divorce action claiming the defendant was not a resident of Nevada, and that her residence and usual place of abode was in Redding, Connecticut. On September 19, 2000, the Nevada District Court denied the plaintiff's motion to dismiss and found the defendant to be a resident of Las Vegas, Nevada. The defendant's case is going forward in the Nevada court with a trial date scheduled in July, 2001.
Some of the background facts are not in dispute. These parties were married on May 1, 1977 in San Francisco, California, almost twenty-four years ago. There were no children issue of this marriage. The defendant has two adult sons from a prior marriage who were raised by both of them. Throughout this marriage, the parties were able to afford a number of expensive homes in a number of different states. From 1993 to July, 2000, these parties have owned and lived in five residences in three different states. They own two mansions in California, one at Lake Tahoe, and the other on Carmelian Bay. They own two 2000 square foot condominiums in the same building in Las Vegas, Nevada, one was used as a residence apartment, and the other was used as an office-residence. In 1996, the defendant bought a large estate in Redding, Connecticut, for about $1.1 million. Then in the following year, they made extensive renovations and improvements on this estate which cost them about another $1 million. The principal assets are owned by Zimmerman Properties and consist of commercial real estate on or near the harbor in San Francisco, California. The substantial part of this real estate was inherited from the estate of the defendant's father valued to be worth $62 million as of his date of death in 1992. The plaintiff had worked with the defendant's father in developing these commercial properties prior to their marriage and until he filed his dissolution action in Connecticut in July, 2000.
The present fair market value of all these properties is estimated to be between $140 to $180 million. The defendant's average annual income is estimated to be about $6 million, and the plaintiff has been earning about $2 million annually from commissions he receives from leases he negotiates for Zimmerman Properties. There are over sixty parcels of real estate owned by Zimmerman Properties.
The residency requirements to bring a divorce complaint in Connecticut are set forth in § 46b-44 of the Connecticut General Statutes which provides in relevant part as follows: "(a) A complaint for dissolution of marriage . . . maybe filed after either party has established residence in this state." "(c) A decree dissolving a marriage . . . may be entered if: (1) One of the parties to the marriage has been a resident of this CT Page 5057 state for at least the twelve months next preceding the date of filing the complaint or next preceding the date of the decree. . . ." The court finds the plaintiff has been a resident of Redding, Connecticut, for at least the past three years.
The statutory authority for serving a complaint in any civil action in Connecticut is found in Connecticut General Statutes § 52-57 (a) which states that "[p]rocess in any civil action shall be served by leaving a true and attested copy of it, including the declaration or complaint, with the defendant, or at his [or her] usual place of abode,in this state." (Emphasis added.) This section provides for service by (1) manual delivery of the process to the defendant within the state which is referred to as personal service, or (2) by leaving a copy of the process at the defendant's usual place of abode, within the state. (Emphasis added.) Either mode of service is adequate to confer in personam jurisdiction over the defendant (Smith v. Smith, 150 Conn. 15, 20
(1962)); and personal jurisdiction over the parties, in turn, confers subject matter jurisdiction over the marital res. (Ivey v. Ivey,183 Conn. 490, 493 (1981).)
Whether or not the Redding residence is her principal residence and her usual place of abode, must be tested by this court's findings of facts.Collins v. Scholz, 34 Conn. Sup. 501, 503 (1976).
After listening to the testimony of both the parties and reviewing the exhibits entered into evidence, the court finds the residence at 85 Diamond Hill Road, Redding, Connecticut, was the principal residence and the usual place of abode of both the parties. The plaintiff established by clear and convincing evidence that between 1996 to July, 2000, they lived the majority of the time as residents of Redding, Connecticut. By residing in Redding, they both met the residency requirements in §46b-44 (a) and (c)(1) of the Connecticut General Statutes.
The abode service of the plaintiff's divorce complaint by a deputy sheriff at the Redding residence, and her admissions that she received it in California and Nevada on or about July 14, 2000, also complied with § 52-57 (a) of the Connecticut General Statutes, thereby giving Connecticut in personam jurisdiction over the defendant and subject matter jurisdiction over the marriage. The court found the plaintiff's testimony credible and probative to establish the following facts:
1. The Redding estate was purchased in defendant's name in 1996 for $1.1 million and during the following year, the parties made extensive renovations to the buildings and the grounds of about another $1 million, which were completed in 1997. From that time to when the defendant left the home in July, 2000, the parties spent an average of CT Page 5058 one hundred forty-seven days for the next three years in the Redding residence. During these same three years, they spent an average of thirty days in the condominium in Las Vegas, Nevada.
2. The Redding estate and residence met their needs a great deal more than the Las Vegas, Nevada condominium. They remodeled the large residence. They also had a new office built for the plaintiff, and had other space remodeled into an office for the defendant, with an art studio and exercise room on the second floor.
They remodeled a five car garage, built a tennis court and a greenhouse, and made improvements to other outbuildings, and improved the grounds. In 1998, servants came from Nevada to live in a cottage on the estate and are still residing there.
3. Between 1997 to the time she was served on July 10, 2000, they moved much of their personal and business records and affairs from Las Vegas, Nevada, to the Redding residence.
4. They developed many social friends in Connecticut during this period. The majority of their thirty or more bank statements from banks in numerous states were sent to the Redding residence. During this period, they became active in the Westport chapter of the United Jewish Appeal. They became directors and were active in raising substantial funds for this Westport, Connecticut, chapter.
5. The plaintiff was made a Connecticut voter on August 16, 2000, indicating his intention to become a domiciliary of Connecticut as well as being a resident here. (Defendant's Exhibit J.)
6. The plaintiff filed his 1999 federal and state income tax returns from his Redding address. (Defendant's Exhibit L.)
7. They used the Las Vegas, Nevada, and other addresses for filing their state and federal tax returns in the state where the tax liability was least. They followed the advice of their accountants as to which state they would file their federal and state tax returns.
8. In a California Tax Board Resident Status Report, there was listed over fifty parcels of commercial real estate. The plaintiff certified that they spent over five and one-half months at the Redding residence, the majority of the time in relationship to their four other residences.
9. The defendant left her clothes and other personal property in the Redding home indicating an intent to return there. CT Page 5059
10. In 1998, they brought their household pets from Las Vegas, Nevada, to their estate in Redding, Connecticut.
11. Between the years 1997 and 2000, they spent an average of one hundred forty-seven days at their residence in Redding, and only thirty days each year in their residence-apartment in Nevada.
12. In February, 2000, they listed for sale the Nevada condominiums.
From these facts, the court finds that both the plaintiff and defendant were residents of Redding, Connecticut, and were in compliance with the residency requirements in § 46b-44 (c)(1) of the Connecticut General Statutes. These facts prove a clear intent committing themselves to make the Redding residence their usual place of abode.
The abode service of the complaint on the defendant at the Redding residence on July 10, 2000, conferred in personam jurisdiction pursuant to § 52-57 of the Connecticut General Statutes. Connecticut has in personam jurisdiction of these parties and of the marriage. The same issue was addressed by the Connecticut Supreme Court in the case of Clegg v.Bishop, 105 Conn. 564, 569 (1927). In denying a defendant's motion to dismiss, pendente lite, the Connecticut court held as follows:
 Under General Statutes, § 5591, service of process may be made by leaving an attested copy with a defendant, or at his usual place of abode. "The most prominent purpose of the law in prescribing the modes of serving civil process was to ensure actual notice to defendants." Grant v. Dalliber, 11 Conn. 233, 237. The place where one would be most likely to have knowledge of a service by copy would be at his usual place of abode. What, then, does "usual place of" signify as used in this statute? One may have two or more places of residence within a State, or in two or more States, and each may be a "usual place of abode." Dorus v. Lyon, 92 Conn. 55, 57, 101 A. 490. Service of process will be valid if made in either of the usual places of abode. It will reach him in one as well as the other. Dorus v. Lyon, supra, is decisive that one may have a home and residence outside this State and yet have a usual place of abode in this State for service of process and sufficient to permit the statute of limitations to run. Grant v. Dalliber, supra; Dunn's Appeal, 35 Conn. 82.
 "Residence" does not necessarily import domicil. CT Page 5060 Easterly v. Goodwin, 35 Conn. 279, 286." Hewitt v. Wheeler School Library, 82 Conn. 188, 194, 72 A. 935. Nor does usual place of abode import domicil. There is no relation between them, though they may be concurrent. A person may have two or more places of abode while he can have only one domicil. Where one has two usual places of abode, one within and one without the State, either of these abodes will be a usual place of abode for the service of process under our statute.
By this court's findings, Redding, Connecticut, is their principal residence and usual place of abode. Therefore, it is unnecessary to address the forum non conveniens argument, as the defendant cites no case where Connecticut was found to be an inconvenient forum where both parties to a divorce action have their principal residence in this state.
For all the reasons stated herein, the defendant's motion to dismiss, pendente lite, is denied.
Romeo G. Petroni, J.T.R.